FREDERICK HUNTER, ANNA HUNTER *v*. STATE OF INDIANA.

[No. 1-976A168. Filed March 3, 1977. Rehearing denied April 7, 1977. Transfer denied June 10, 1977.)

398

*John D. Clouse,* of Evansville, for appellants.

*Theodore L. Sendak,* Attorney General, *David T. O'Malia,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendants-appellants, Frederick and Anna Hunter, bring this appeal following their conviction on three counts of Cruelty to a Child.[1]

---

1. IC 1971, 35-14-1-4 (Burns Code Ed.).

"Cruelty and neglect of children.—Any parent, guardian or person having the care, custody or control of any child who shall abuse, abandon, be cruel to or neglectful of such child, or any person who shall be deemed to be guilty of 'cruelty and neglect of children' shall, upon conviction thereof, be fined not less than two hundred dollars [$200] nor more than one thousand dollars [$1,000] or imprisoned for a term not more than one year, or such person may be imprisoned in the state prison for not less than one [1] year nor more than five [5] years, and may be disenfranchised and rendered incapable of holding any office of profit or trust."

The facts most favorable to the judgment indicate that a four count information was filed against both Frederick and Anna Hunter. The first three counts alleged acts of cruelty to a child. The fourth count alleged conspiracy to commit a felony. The trial to a jury resulted in a conviction on the three counts of cruelty to a child. The court granted the defendants' motion for judgment on the evidence as to the conspiracy count.

The evidence at trial indicates the child, David Lee Hunter, was the adopted son of the defendants. The Hunters asserted that the five year old boy suffered from epilepsy and the seizures resulted in falls causing bruises to David's body. The medical testimony revealed no indications of epilepsy in the boy.

In April of 1974, the initial complaint of child abuse was registered against the Hunters. The matter was investigated by officer Jane Dassel of the Evansville Police Department. Dassel observed and photographed numerous bruises on the boy's body. David told Dassel that his father had spanked him with a belt for being "mean". Officer Dassel referred the case to the Welfare Department.

Shortly thereafter a neighbor began baby-sitting for David. The neighbor and another friend testified that David always had new bruises on his body and never experienced any seizures in their presence.

A second complaint was lodged with the police in August of 1974. This incident was investigated and neighbors recounted several incidents of child abuse. Among the incidents were kicking, throwing hot water in the boy's face, whipping with a frying pan and leaving the boy on the porch all night.

In September, David started school and his teachers quickly noticed excessive absences. When he returned he would be bruised on the face and would be wearing a long-sleeved turtleneck sweater despite the extremely hot weather. The teachers

continued to observe bruises on David and after two months informed the police who again investigated.

Following an examination and photos, David was turned over to the Welfare Department and he was taken into emergency custody.

At trial Anna's natural son by a prior marriage (Frederick Sr's. adopted son) testified that he had beaten David and that he was responsible for David's bruises. Testimony was given by a neighbor which clearly impeached the testimony of Frederick Hunter, Jr.

The jury found the Hunters guilty on three counts of cruelty to a child and they were sentenced to one to five years imprisonment on each count.

The Hunters present for our review 16 alleged errors:

(1) Must the State submit written voir dire questions in compliance with a court order?

(2) Is IC 1971, 34-14-1-4 (Burns Code Ed.) unconstitutionally vague?

(3) Were the defendants placed in jeopardy twice for the same acts?

(4) Were admissions of Anna Hunter erroneously allowed into evidence?

(5) May a seven year old testify? And if so, is there a parent-child privilege?

(6) Must the parents waive the physician-patient privilege before the physician can testify?

(7) Should the State's witness have been allowed to relate information obtained from a minor child?

(8) Was a witness' statement, which is false on its face, prejudicial when admitted into evidence?

(9) Was evidence of admissions by deputy prosecutors wrongfully excluded from evidence?

(10) Was exclusion of testimony refuting the charges reversible error?

(11) Should testimony have been allowed which would bolster the credibility of a defense witness?

(12) Did the court err in allowing impeachment of a defense witness and subsequently admonishing the jury?

(13) Was prejudicial hearsay allowed into evidence?

(14) Were the trial courts admonitions to the jury reversible error?

(15) Were any of five alleged errors in instructing the jury prejudicial?

(16) Was the verdict supported by insufficient evidence in light of judicial confessions by third parties?

## I.

The Hunters' first allegation of error charges that they were denied equal protection of the law when the State was permitted to conduct oral voir dire. The court had issued an order which required submission of written questions 24 hours prior to trial. The State failed to comply with this order but was permitted to conduct oral voir dire after the court had completed its questioning. The defendants complied with the order.

In Indiana, the trial court is granted wide discretion in conducting voir dire examinations. *Tewell* v. *State* (1976), 264 Ind. 88, 339 N.E.2d 792; *White* v. *State* (1975), 263 Ind. 302, 330 N.E.2d 84. This court will not review the discretion of the trial court in conducting voir dire absent a clear showing of abuse of discretion. *Roby* v. *State* (1938), 215 Ind. 55, 17 N.E.2d 800.

In the case at bar we find no abuse of the trial court's discretion. The order of the court specifically stated that the parties would have an opportunity to supplement the court's examination. The parties were not required to submit questions to the court. The parties could do so if they wished, and thus preserve a greater portion of their allotted oral voir dire time.

The recent case of *Cissna* v. *State* (1976), 170 Ind. App. 437, 352 N.E.2d 793 (transfer denied December, 1976) succinctly stated the law in regard to voir dire and judicial discretion:

"The purpose of voir dire is to determnie whether a prospective juror is able to deliberate fairly on the issue of guilt, *Lamb* v. *State* (1976), [264] Ind. [563], 348 N.E.2d 1, and a trial judge has wide discretion in conducting voir dire. *White* v. *State* (1975), [263] Ind. [302], 330 N.E.2d 84. When an act has been committed to the trial court's discretion, it will be reversed only upon a showing of a manifest abuse of such discretion and a denial to the complaining party of a fair trial. *Muehlman* v. *Keilman* (1971), 257 Ind. 100, 272 N.E.2d 591."

In the case at bar we find no abuse of discretion. The defendant has been unable to demonstrate how he was prejudiced or denied a fair trial by the voir dire procedure. Absent a showing of prejudice, this court will not reverse a discretionary decision of the trial court. *Cissna, supra.*

II.

The Hunters' second allegation of error contends that the child abuse statute under which they were convicted is unconstitutionally vague. When the constitutionality of a statute is challenged, this court will apply the standard of review stated by the recent Indiana Supreme Court case of *Sidle* v. *Majors* (1976), 264 Ind. 206, 341 N.E. 2d 763, where it is stated:

"Therefore, every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary.
"In the deliberative process, the burden is upon the challenger to overcome such presumption, and all doubts are resolved against his charge."

When the basis of the constitutional challenge is vagueness of the statute we must apply the test of specificity provided by *Platt* v. *State* (1976), 168 Ind. App. 55, 341 N.E.2d 219:

"A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it to adequately inform them of the conduct to be proscribed. *Sumpter* v. *State* (1974), [261] Ind. [471], 306 N.E.2d 95; *Stanley* v. *State* (1969), 252 Ind. 37, 245 N.E.2d 149."

In light of the above we feel that the defendants have not met their burden of demonstrating that individuals of ordinary intelligence could not ascertain the proscribed conduct from a reading of the pertinent portions of the questioned statute:

\* \* \*

"Cruelty to a child shall consist in any of the following acts: (a) inflicting unnecessarily severe corporal punishment upon a child; (b) inflicting upon a child unnecessary suffering or pain, either mental or physical; (c) habitually tormenting, vexing or afflicting a child; (d) any wilful act or omission or commission whereby unnecessary pain and suffering, whether mental or physical, is caused or permitted to be inflicted on a child; (e) or exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child." IC 1971, 35-14-1-2 (Burns Code well-being of such child." \* \* \* IC 1971, 35-14-1-2 (Burns Code Ed.).

We believe that the above quoted statute contains sufficient specificity for men of ordinary intelligence to be able to determine the proscribed conduct. A fact question will be presented as to whether or not any particular conduct will be in violation of the statute. In the case at bar the jury found that the conduct was unnecessarily severe and harmful to the child. Men of ordinary intelligence and experience are capable of judging if hitting a child with a frying pan is "unnecessarily severe corporal punishment." Likewise, violence sufficient to produce severe bruises is enough to allow an ordinary man to test the "unnecessary" nature of the punishment inflicted. The statute need only inform the individual of the generally proscribed conduct, it need not list with itemized exactitude each item of conduct prohibited.

In light of the above standards and discussion, we hold IC 1971, 35-14-1-2 to have sufficient specificity to withstand a constitutional challenge.

### III.

Hunters' third allegation of error charges that jeopardy attached when they were brought before a juvenile referee and David was removed from their custody. It is the Hunters' contention that the subsequent trial, for cruelty to a child, twice placed them in jeopardy for the same acts and thus violated the Constitution of Indiana, Article 1, § 14 and the Fifth Amendment to the United States Constitution.

The basis for the Hunters' contention is the case of *Breed* v. *Jones* (1975), 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346. That case involved a juvenile jurisdiction waiver proceeding which required a finding that the juvenile had committed the crime prior to being waived to adult criminal court. The Supreme Court held that jeopardy attached when the trier of fact begins to hear evidence at the adjudicatory hearing, and his subsequent trial in the adult court twice placed him in jeopardy for the same acts.

The Hunters' case is made somewhat more complex by the overlapping statutes which were in effect at the time of the initial alleged acts of cruelty. These statutes must be considered before the *Breed* test can be applied to the Hunters' case. First is IC 1971, 31-5-7-1 (Burns Code Ed.). This is the statute under which the juvenile proceedings were initiated as indicated by the record of those proceedings. The key section of that chapter is Section 1 which expresses the purpose of the Act.

> "31-5-7-1 [9-3201]. Purpose and basic principle.—The purpose of this act [31-5-7-1—31-5-7-25] is to secure for each child within its provisions such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents.
>
> "The principle is hereby recognized that children under the jurisdiction of the court are subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the

legal obligations due to them and from them. [Acts 1945, ch. 356, § 1, p. 1724]."

The second statute which must be considered is IC 1971, 31-5-5-4 (Burns Code Ed.), repealed June 11, 1974, which reads as follows:

"31-5-5-4 [9-2809]. Dependent or neglected child—Contributing to neglect—Penalty.—When any child is found to be dependent or neglected, as defined by sections 1 and 2 [31-5-5-1, 31-5-5-2] of this act, the parent, parents, person or persons having the care, custody or control of such child, or any other person who is or are responsible for, or who by any act or omission of duty encourages, counsels or contributes to the neglect of such child, or who, by reason of wilful neglect of any duty owing by said parent or parents, person or persons to such child, is or are responsible for its neglect or dependency, shall be deemed guilty of a misdemeanor, and, on conviction in any juvenile court, be fined in any sum not exceeding five hundred dollars [$500]; to which may be added imprisonment in the county jail or workhouse for a period not exceeding six [6] months: Provided, That the court shall have power to suspend judgment and release the defendant from custody on probation for a period not exceeding two [2] years from the date of conviction, on condition that the defendant shall make his or her personal appearance in court whenever ordered so to do within such period, and shall provide and care for such dependent or neglected child in such manner as the court shall order and direct. If the court find at any time during such period that the defendant has violated any of the terms of such order, it may forthwith revoke such order and render judgment against the defendant under the original conviction. Unless a judgment is rendered within two [2] years the defendant shall, at the end of such period, be discharged and such conviction shall be void."

The third and final statute for our comparison is IC 1971, 35-14-1-4 (Burns Code Ed.), Cruelty and Neglect of Children, which was quoted above.

It is the Hunters' contention that the hearing in the juvenile court, where custody of the child was taken from them, was adjudicatory in nature and thus jeopardy attached when the referee began to hear evidence as the trier of fact. If this is true, jeopardy attaches and no

other actions can be initiated against the Hunters by the State. *Breed, supra.*

A careful reading of the *Breed* case and a comparison of it with the proceedings in the case at bar show distinct dissimilarities between the two cases. The most significant difference is the nature of the two proceedings. In *Breed* both the proceedings had as their purpose, the finding of guilt and the assessment of punishment. In the case at bar, the distinguishing characteristic is best shown by a reading of the purpose and basic principle as shown by IC 1971, 31-5-7-1, *supra*. That statute clearly shows the legislature intended the juvenile hearing to be conducted for the safety and welfare of the child. The hearing is essentially civil in nature. The Supreme Court of Indiana held similarly in the case of *Board of Childrens Guardian's* v. *Gioscio* (1936), 210 Ind. 581, 4 N.E.2d 199. In so doing they interpreted IC 1971, 31-5-5-3 (Burns Code Ed.) [formerly Burns 9-2808] as follows:

"This is in the nature of a civil proceeding. It is not a criminal proceeding and is not done in the name of the state, but by any person or by the Board of Children's Guardians upon petition. It is a special statutory proceeding and the provisions of the statute must be followed."

This interpretation, with which we agree, brings into play the language of Hon. Chief Justice Burger in the *Breed* case:

"Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution. See Price v. Georgia, 398 U.S. 323, 326, 329, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970); Serfass v. United States, 420 U.S. 377, 387-389, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Although, the constitutional language, "jeopardy of life or limb,' suggests proceedings in which only the most serious penalties can be imposed, the Clause has long been construed to mean something far broader than its literal language. See Ex parte Lange, 85 U.S. (18 Wall.) 163, 170-173, 21 L.Ed. 872 (1873). At the same time, however, we have held that the risk to which the Clause refers is not present in proceedings that are not 'essentially criminal.' Helvering v. Mitchell, 303 U.S. 391, 398, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938). See United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379,

87 L.Ed. 443 (1943) ; One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). See also J. Sigler, Double Jeopardy 60-62 (1969) ."

That language appears to exclude any theory that jeopardy would attach to the parents at a hearing before a juvenile court as was done in the case at bar.

Even if it were held that jeopardy attached at the hearing, it would only require reversal as to Count III. Counts I and II alleged specific dates of acts as a basis for the information. These dates were after the repeal of IC 1971, 31-5-5-4 (Burns Code Ed.) and thus no proceeding in regard to that statute can in any manner affect the indicting of persons for acts which occurred after the repeal of the statute.

It is elementary that similar acts, done many times are chargeable individually as separate and distinct criminal conduct. Thus each of the three counts constitute a different crime and proceedings in regard to one act does not affect the possibility of charging the Hunters for the other acts of abusing the child.

We therefore hold that jeopardy did not attach and no error was committed by the trial court in refusing the special plea of double jeopardy entered by the appellants.

The Hunters further contend that the juvenile court punished them by removing David from their custody and ordering support payments be made for the care of David. That order was not for punishment of the Hunters, but was clearly for the child's welfare. We therefore hold that no reversible error as to Issue III was committed by the trial court.

## IV.

The Hunters next contend that the trial court erred by allowing Police Officer Dassel to relate parts of a conversation which she had with Mrs. Hunter prior to advising her of her

"Miranda Rights."[2] The essence of the objected to conversation was an admission by Mrs. Hunter that she was David's mother.

The case at bar does not fall within the controls of the Miranda decision. As the State correctly indicates, the Supreme Court did not intend to put an end to police questioning and indicated so by saying:

> "General on-the scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."

This court has previously faced similar problems and has held that general questioning as to surrounding circumstances of a crime is not within the ambit of *Miranda. Cissna* v. *State* (1976), 170 Ind. App. 437, 352 N.E.2d 793, *Dillon* v. *State* (1971), 257 Ind. 412, 275 N.E.2d 312. A question as to Mrs. Hunter's relationship to David clearly required no warning under the *Miranda* doctrine.

## V.

The appellants next question the propriety of allowing David Hunter, age seven, to testify. They specifically contend that he was not competent due to his age and that it was not shown that the statutory presumption of incompetency was adequately overcome. As a corollary to the above objection, the Hunters allege that a "parent-child" privilege should exist which would preclude David from testifying against his parents.

The statute relevant to David's competency is IC 1971, 34-1-14-5 (Burns Code Ed.) which reads in pertinent part:

"34-1-14-5 [2-1714]. Who are incompetent.—The following persons shall not be competent witnesses:

\* \* \*

2. *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694.

Second. Children under ten [10] years of age, unless it appears that they understand the nature and obligation of an oath."

\* \* \*

The testing of the child's understanding of the meaning of taking an oath has been delegated to the discretion of the trial court. This court in *Scales* v. *State* (1975), 165 Ind. App. 588, 333 N.E.2d 814 stated the standard of reviewing the trial court's discretion in the following manner:

"The determination of whether a child under the age of ten understands the nature and obligation of an oath is within the discretion of the trial judge, who has the opportunity to observe the general maturity and demeanor of the child. This Court will not reverse the trial judge's determination that the child is competent to testify unless there is a showing of manifest abuse of that discretion. *Martin* v. *State* (1969), 251 Ind. 587, 244 N.E.2d 100; *Morgan* v. *State* (1962), 243 Ind. 315, 185 N.E.2d 15; *Shipman* v. *State* (1962), 243 Ind. 245, 183 N.E.2d 823."

A study of the record in the case at bar indicates that the trial court conducted an examination of David Hunter which was sufficient to allow the judge to exercise his discretion as to David's competency.

The Hunters' second challenge to David's testimony attempts to create a "Parent-Child" privilege. This court soundly denounced the theory of a "Parent-Child" privilege in the *Cissna, supra,* case and we feel correctly so.

## VI.

The Hunters next allege that plaintiff's witness Conn Healy should not have been allowed to testify as his testimony violated the physician-patient privilege.

This contention requires us to again review IC 1971, 34-1-14-5 (Burns Code Ed.) where it is stated:

"Who are incompetent—The following persons shall not be competent witnesses:

\* \* \*

"Fourth: Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases."

\* \* \*

This privilege, if it existed, could of course be waived. The Hunters contend that, as parents of a minor child, only they have the right to waive the privilege. We do not find it necessary to directly discuss the waiver question.

The Indiana Legislature has clearly resolved the question of a child's physician-patient privilege in cases such as the one at bar. IC 1971, 12-3-4.1-5 (Burns Code Ed.) reads as follows:

"Physician-patient privilege — Husband-wife privilege. — Neither the physician-patient privilege nor the husband-wife privilege shall be grounds for excluding evidence in any judicial proceeding under this chapter [12-3-4.1-1—12-3-4.1-6] and IC 1971, 35-14-1 [35-14-1-1—35-14-1-7; Burns' §§ 10-812—10-816b]. [IC 1971, 12-3-4.1-5, as added by Acts 1971, P.L. 170, § 1, p. 679; P.L. 116, § 2, p. 669.]"

We find this statute to be dispositive of the issue of a parent waiving a child's physician-patient privilege in an action brought under IC 1971, 35-14-1-4, for cruelty and neglect of a child, as was the case at bar.

## VII.

For their seventh allegation of error, the Hunters contend that Officer Jane Dassel should not have been allowed to relate the essence of a conversation she had with David. The objection is predicated on David being an incompetent witness.

This allegation must fail for two separate reasons. Initially, David was found to be a competent witness by the trial court. This would preclude the use of any theory based on his incompetence.

Secondly, the purpose of the competency rule is to assure that the witness who is testifying understands and can obey

the oath to tell the truth. The objection at hand is to the testimony of an experienced police officer who clearly understands the meaning of sworn testimony. The fact that she is relating statements made by a five year old child will not allow a reversal based on the competency of the child.

## VIII.

The defendants next assert that reversible error was committed when the trial court permitted the out-of-court perjurious statement of a witness to be read into evidence. The witness, Omar Doan, signed the document saying that he had read the statement and that it was true and correct. At trial, Doan reaffirmed the truth of the substantive portion of the statement but admitted that he could not read and that he had therefore not read the statement.

Appellants contend that admitting a document containing a known false statement is reversible error. On the facts of the case, we must disagree.

While it is true that Doan could not read and that he had signed a statement saying he had read the document, a study of the document shows it to be a pre-printed statement form used by the Evansville Police Department. The sentence in question was pre-printed on the document prior to Doan giving the statement. This same sentence is no doubt on the vast majority of statements taken by the Evansville Police Department.

The statement was read to Doan while he was on the witness stand and he affirmed it as being true and correct. Prior to his affirmance of the statement he had given substantially the same oral testimony. Since the same basic testimony was given twice, the admission of the statement was merely cumulative in nature and this court will not reverse for admission of cumulative evidence. *Koonce* v. *State* (1975), 262 Ind. 5, 323 N.E.2d 219. *Chatman* v. *State* (1975), 263 Ind. 531, 334 N.E.2d 673.

The case of *Brown* v. *State* (1975), 264 Ind. 40, 338 N.E.2d 498, also sheds some light on the proper disposition of this issue. A statement had been admitted which was largely consistent with the declarant's in-court testimony and the dicta stated that the error in admitting the statement, if any, was harmless.

In light of the fact that the only allegation of error concerns the admission of the document, and not Doan's oral testimony, we find the document to be cumulative evidence, and therefore we find no error.

## IX.

Defendants next contend that the trial court committed reversible error by excluding the testimony of attorneys John Bunner and James Rode. The attorneys were the original defense counsel for the defendants. In their offer to prove, the Hunters indicated that both attorneys would testify that they were assured by the prosecutor's staff that no criminal charges would be lodged against the Hunters if they did not attempt to re-obtain custody of David. It is alleged that this testimony would have constituted an admission of a party-opponent and thus was improperly excluded from evidence. We disagree on two separate bases.

 The classic definition of an admission of a party-opponent can be found in *Marsh* v. *Lesh* (1975), 164 Ind. App. 67, 326 N.E.2d 626 where it is stated:

". . . admissions of a party-opponent. Such an admission has been defined as a statement against the interest of a party which is inconsistent with a defense, or tends to establish or disprove a material fact."

The alleged admissions by the State did not fit that definition as they did not address a material fact, defense, or element of the charges against the Hunters. Since the comments by the State were not admissions of a party-opponent, they are not admissible under that theory.

Secondly, we conclude that the statements were closely aligned to a plea bargaining negotiation and were therefore privileged and not admissible into evidence. In defining a plea bargain, this court in *Moulder* v. *State* (1972), 154 Ind. App. 248, 289 N.E.2d 522 stated:

> "The character of the communication is the test to be applied. The communication must have as its ultimate purpose the reduction of punishment or other favorable treatment from the State to the defendant."

The preclusion of any prosecution is obviously favorable treatment by the State in exchange for some action by the Hunters.

This court has taken a firm stand on the admission of plea bargaining negotiations as expressed in *Hineman* v. *State* (1973), 155 Ind. App. 293, 292 N.E.2d 618:

> " 'Unless the defendant subsequently enteres [sic] a plea of guilty or nolo contendere which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea agreement *should not be received in evidence against or in favor of the defendant in any criminal* or civil action or administrative proceedings.' " (Original emphasis).

In light of the above, we hold that the trial court correctly excluded the testimony of Bunner and Rode.

## X.

The tenth allegation of error by the Hunters contends the trial court erroneously prevented testimony by Harold Bellamy and defendant Anna Hunter. The alleged errors are argued together by the appellants and we will address them in the same manner.

Bellamy was a defense witness who was precluded from answering the following two questions:

(1) "Did you ever see the Hunters willfully inflict unnecessarily severe corporal punishment on the child?
and
(2) "Did you ever see the Hunters torment, vex or afflict young David Lee Hunter?"

Defendant Anna Hunter was prevented from answering the following question:

"Do you think you are strong enough physically to inflict much of an injury on anyone or anything?"

The questions addressed to Bellamy called for a conclusion by him on the exact issue which the jury was to decide. It has long been the law in Indiana that opinion testimony is not admissible when it is elicited from a lay witness. *LeFlore* v. *State* (1972), 258 Ind. 458, 281 N.E.2d 876. It is just as settled that a witness will not be allowed to express a conclusion on the ultimate question to be decided by the jury. *Gurley* v. *State* (1976), 264 Ind. 552, 348 N.E.2d 16. Therefore, in light of the discretion vested in trial courts in the admission of lay witness opinions, *Williams* v. *State* (1976), 265 Ind. 190, 352 N.E.2d 733, we find no error in the exclusion of Bellamy's answers.

The question directed to Anna Hunter also called for a conclusion or opinion on the part of the witness. As stated in *Williams, supra,* such questions are within the discretion of the trial court. In addition, the defendant was allowed to exhibit her injured arm to the jury. She testified as to the number of operations she had undergone on the arm and expressed an opinion as to the use she had been able to make of the arm during the last several years. Even if it were error to exclude Mrs. Hunter's answer it would only have provided cumulative evidence and this court will not reverse for admission or denial of cumulative evidence. *Koonce, supra;* and *Chatman, supra.* In light of the other overwhelming evidence we deem any error in the questioning of Mrs. Hunter in regard to her arm to be harmless error, especially in view of the other evidence in regard to her arm. *State* v. *Bryant* (1975), 167 Ind. App. 360, 338 N.E.2d 690.

## XI.

The eleventh alleged error occurred when the trial court refused the defendants' offer to call attorney John Bunner to

testify in regard to an admission by the State as discussed in Issue IX. The second attempt to elicit testimony from Bunner was predicated on a need to show a reason for a delay in the testimony of Frederick Hunter, Jr. Frederick, Jr. testified that he was the cause of the bruises to David and not the defendants.

The appellants contend that the testimony of Bunner would have shown a reason for Frederick Hunter, Jr.'s delay in admitting the acts, namely that he thought no charges would be brought against his parents. This delay had been questioned by the State on the cross-examination of Frederick, Jr.

The appellants cite *Swininger* v. *State* (1976), 265 Ind. 144, 352 N.E.2d 473 for the proposition that the link between evidence and the defendants need not be absolute. *Swininger* involved the introduction of several items, which allegedly had been taken in a robbery and later found in the possession of the defendant. The court held it unnecessary for the items to be identified with specific testimony and allowed their introduction because they tended to connect the defendants with the crime.

The case at bar is clearly distinguishable. Frederick, Jr. offered no reason why he had not testified earlier. There was not even a tentative link between any agreement between Bunner and the State as to failure to prosecute the Hunters. When a tentative connection cannot be shown between Frederick, Jr.'s belated testimony and Bunner's testimony; since it was never shown that Frederick, Jr. received the supposed "plea bargain" information in any manner, Bunner's testimony was properly excluded for the reasons stated in Issue IX.

### XII.

The defendants next contend that error was committed when the trial court allowed the State to question one witness in regard to an exchange he had had with another witness outside the courtroom. More specifically, the exchange con-

sisted of threats of bodily harm by defense witness Paul Kosh against the State's witness Omar Doan. The court allowed the testimony and instructed the jury that they were only to consider it in testing the credibility of the witness Kosh.

The defendants contend that the questions concerned a collateral matter and thus were not allowable into evidence. We must disagree.

The statements by Kosh clearly show his strong feeling toward the defendants. It has long been the law in Indiana that evidence may be introduced to show bias or prejudice by a witness. This evidence is not collateral in nature, nor is it limited to the scope of direct examination. *Clark* v. *State* (1976), 264 Ind. 524, 348 N.E.2d 27.

In addition, the trial court is granted discretion in the admission of evidence as to bias and the *Clark* case impliedly approved the wise exercise of that discretion. We find no error in the ruling by the trial court on the bias testimony in regard to Kosh's credibility.

## XIII.

The defendants next object to the admission of a statement made by Frederick Hunter, Jr. to State's witness Jill Sullenger. In essence, the statement tended to impeach much of what Frederick, Jr. had testified to in court and contains a statement that Frederick, Jr. thought David should be taken from the defendants.

The defendants' objection is founded on the hearsay rule of evidence and the trial court admonished the jury to only consider the testimony in testing the credibility of Frederick Hunter, Jr.

Indiana's definition of hearsay evidence can be found in the case of *Patterson* v. *State* (1975), 263 Ind. 55, 324 N.E.2d 482:

"Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, *and thus resting for its value upon the credibility of the out-of-court asserter*. (McCormick, Evidence § 225). (Emphasis ours) Harvey v. State (1971), 256 Ind. 473 at 476, 269 N.E.2d 759 at 760."

The objected to statement in the case at bar fails to meet that definition on two separate grounds. Initially, the alleged out-of-court asserter, Frederick Hunter, Jr., was present as a witness and denied making the alleged statements. Secondly, the objected to statements were limited in use to testing the credibility of the asserter, Frederick Hunter, Jr. and not for purposes of substantive evidence.

It is clear under the *Patterson* decision, prior inconsistent statements are admissible for both impeachment and substantive purposes and the trial court did not err in admitting the statement.

## XIV.

The defendants' next allegation of error encompasses admonitions to the jury given by the trial court in conjunction with the admission of evidence in both issues XII and XIII. The defendants object to the giving of oral instructions to the jury and further object to the trial court directing a test of credibility toward one witness.

Appellants cite as authority for charging the commission of error Ind. Rules of Procedure, Trial Rule 51(A). We feel that TR. 51(A) is not applicable to the case at bar. The instructions intended to come within the ambit of TR. 51(A) are made clear by the introductory clause of that subsection "General instructions at *commencement* of action." (Our emphasis). The questioned statements were clearly after the commencement of the action and thus TR. 51(A) cannot apply.

In addition, appellants cite a number of cases for the proposition that oral instructions in a criminal case require re-

versal. In each of the cited cases the appellants had specifically requested the instructions be in writing and the trial court still gave them orally. The cases further indicate that the instructions under consideration were final in nature, and not similar to the ones at bar.

The appellants further rely on the case of *McDonough* v. *State* (1961), 242 Ind. 376, 175 N.E.2d 418, for a theory that an instruction on witness credibility cannot singly refer to one witness. We find *McDonough* distinguishable. It appears that *McDonough* involved the rejection of final instructions, not admonitions in regard to limited use of testimony as we have in the case at bar.

The statements made by the trial court cannot be correctly characterized as instructions. The distinction between instructions and admonitions was succinctly stated shown in the case of *Miller* v. *Noell* (1922), 193 Ky. 659, 237 S.W. 373, where it is stated:

". . . an 'admonition' is any authoritative oral communication or statement by way of advice or caution, made by the court to the jury during the trial of a case, respecting their duty or conduct as jurors, the admissibility or nonadmissibility of evidence offered by the parties, or the purpose, if competent only for a particular purpose, for which any of that admitted might or should be considered by them.

\* \* \*

"The instructions are from the court and addressed to the jury, and contain the law of the case by which they are to be guided and controlled in arriving at a verdict."

See also *Huntington* v. *Hamilton* (1947), 118 Ind. App. 88, 73 N.E.2d 352.

The remarks by the trial court are within the definition of an admonition and therefore are not to be guided by the rules controlling instructions. We can find no error in the instructions given by the trial court in regard to limiting the use of the questioned testimony.

The appellants also question the correctness of the trial court asking the jury if they will follow his "limited use"

admonitions. This is within the discretion of the trial court and we find no reversible error.

## XV.

The Hunters next allege that the trial court committed reversible error in the final instructions given to the jury. They contend that five separate errors were committed. We therefore must treat each allegation individually.

## A.

Appellants object to the giving of a verdict instruction and the simultaneous denial of two tendered defense instructions. The basis of the objection is the refusal of the trial court to include an element in the instructions which would encompass assault and battery as a lesser included offense.

For the error to be reversible it is apparent that assault and battery must be a lesser included offense in the charged crime, cruelty to a child. IC 1971, 35-1-39-2 (Burns Code Ed.) sets the standard for determination if one offense is included in another.

> "35-1-39-2 [9-1817]. One offense included in another.—In all other cases, the defendant may be found guilty of any offense, the commission of which is *necessarily included* in that with which he is charged in the indictment or information." (Emphasis added).

By definition for a crime to be an included offense, it must be impossible to commit the offense charged without also having committed the lesser offense.

A comparison of Indiana's assault and battery statute,[3] and the cruelty to a child statute, *supra,* shows that the element

---

3. 35-1-54-4 [10-403]. Assault and battery.—Whoever in a rude, insolent or angry manner, unlawfully touches another, is guilty of an assault and battery, and on conviction, shall be fined not more than one thousand dollars [$1,000], to which may be added imprisonment in the county jail not exceeding six [6] months: * * *

of "touching" is required for assault and battery. That element is not essential for a conviction of cruelty to a child, and thus it is possible to commit one crime without having committed the other. This possibility removes the two crimes from within the "lesser included offense" realm and thus removes any duty to instruct on a lesser included charge. *Hammer* v. *State* (1976), 265 Ind. 311, 354 N.E.2d 170.

## B.

The second alleged error in instructions charges the trial court with erroneously giving the State's tendered instruction on aiding and abetting. The instructions included a near repetition of the applicable statute and an explanation of the law.

The defendants predicate their entire objection on the theory that a husband and wife are a single entity and thus not capable of aiding and abetting itself. We must disagree.

Appellant cites as authority *State* v. *Estate of Weinstein* (1967), 141 Ind. App. 395, 228 N.E.2d 23. That case is of little assistance as it deals with property law and discusses tenancy by the entireties.

Appellants also cite *Hanna* v. *Hanna* (1968), 143 Ind. 490, 241 N.E.2d 376 which discusses interspousal immunity with approval. The Supreme Court abolished interspousal immunity in *Brooks* v. *Robinson* (1972), 259 Ind. 16, 284 N.E. 2d 794.

No cases exactly on point have been found and none have been cited by either party. In light of the policy of individuality expressed by the *Brooks* case; we hold that, for purposes of aiding and abetting, a husband and wife are not a single entity and may be convicted of aiding and abetting. Therefore, no error occurred in the instructing of the jury on aiding and abetting.

## C.

The appellants next question the giving of the State's instruction number 8. The instruction consisted of a dictionary definition of the words torment, vex, afflict, and unnecessary. It is the Hunters' contention that the giving of this instruction invaded the province of the jury. We disagree.

The courts in Indiana have previously allowed the definition of terms as part of the instructions to the jury. The case of *Stull* v. *Davidson* (1955), 125 Ind. App. 565, 127 N.E. 2d 130 allowed the definition of the term contributory negligence and *Armstrong* v. *Binzer* (1936), 102 Ind. App. 497, 199 N.E. 863 gave approval to a definition of "reckless disregard of rights of others."

A more recent Supreme Court case appropriately expressed this court's opinion in regard to defining or explaining terms to a jury:

"We believe that the above instruction is a correct statement of Indiana law, but that it is not necessary to give an instruction defining 'mental disease or defect' unless *the trial court in its discretion* determines that such a definition is necessary to dispel jury confusion." (Emphasis added.)
*Stevens* v. *State* (1976), 265 Ind. 396, 354 N.E.2d 727.

We are of the opinion that the giving of the instruction defining the above terms was within the discretion of the trial court to dispel any confusion which may exist as to their meaning.

## D.

The fourth allegation of error in regard to instructions questions the giving of State's instruction number 10 in conjunction with instruction number 4. The Hunters charge that the instructions are repetitive and emphasize elements whch tend to lessen the burden of proof for the State.

A study of the respective instructions reveals that they cover separate and distinct areas. Number 10 deals with the

distinction between substantive and circumstantial evidence and weight to be given to the evidence. Instruction 4's thrust is toward the burden of proof on the State and how evidence applies toward meeting that burden.

While the instructions may overlap in some small degree, this is clearly not reversible error. The rule in this regard was clearly stated in *Patterson* v. *State, supra.*

> " '* * * Certainly all phases of the law cannot be covered in a single instruction. By their very nature there is a certain amount of repetition in the instructions when taken as a whole. It is only when instructions are so repetitious as to place an undue emphasis on a particular point that they become improper. * * *.' "

The instructions in the case as bar are certainly not so repetitive as to place undue influence on one point. Therefore, no error was occasioned by the giving of both instructions.

### E.

The defendants' final allegation of error in regard to instructions charges that the court erred in refusing their instruction on the requirement of intent for conviction for a crime. The instruction also spoke to mistakes in judgment not being punishable as crimes.

Appellants cite as authority for their instruction *Heglin* v. *State* (1957), 236 Ind. 350, 140 N.E.2d 98 and *Roark; Holcomb* v. *State* (1955), 234 Ind. 615, 130 N.E.2d 326. The *Heglin* case dealt with premeditation as an element of first degree murder. *Roark* concerned auto banditry and a possible intent to escape. In both *Roark* and *Heglin* the intent or state of mind of the defendants was the key element in the entire case. Both cases involved one incident which occurred in a very short space of time, not a series of acts as the evidence revealed in the case at bar. In the case at bar the intent of the Hunters was at best a collateral issue which was supported by evidence of the acts committed.

In addition, the tendered instruction was not a correct statement of the law and was thus properly refused. The case of *Eaglen* v. *State* (1967), 249 Ind. 144, 231 N.E.2d 147 in effect removes the requirement of intent from the cruelty to a child statute by holding that entrusting the care of one's child to another does not relieve the parents of the duty to care for his child. Thus the parent need not have the specific intent to commit the act, but merely allowing that act to be committed will support a conviction for cruelty to a child.

Secondly, the instruction is fatally incorrect in that it suggests a civil remedy may be available in the case. This is clearly not a correct statement of the law. Indiana maintains a parent-child immunity in tort actions. *Vaughan* v. *Vaughan* (1974), 161 Ind. App. 497, 316 N.E.2d 455. Therefore, the instruction would have misinformed the jury and should not have been given.

## XVI.

The appellants' final allegation of error charges that the verdict is not supported by sufficient evidence and is thus contrary to law.

The argument is centered on the testimony of Frederick Hunter, Jr. In that testimony he asserted that he and not the parents, had beaten David.

It is elementary that this court will neither weigh the evidence nor test the credibility of the witnesses on appeal but will consider only the evidence most favorable to the State together with all reasonable inferences to be drawn therefrom. *Rinard* v. *State* (1976), 265 Ind. 56, 351 N.E.2d 20.

It is the task of the trier of fact to sort the evidence and select those witnesses whom they chose to believe and reject the conflicting testimony from witnesses they feel have lower credibility. *Williams* v. *State* (1976), 264 Ind. 441, 346 N.E.2d 579.

A review of the record reveals ample evidence upon which the jury could reach the verdict it did. We find the defendants' contention that the "Judicial admission" of Frederick Hunter, Jr. requires a finding of not guilty, to be erroneous. As was stated in *Williams,* the jury tests the credibility of witnesses. The jury could accept or reject the testimony of Frederick Hunter, Jr. His credibility had been impeached by a prior inconsistent statement. The jury observed the demeanor of all witnesses and it was exclusively within their province to determine questions of fact.

No error having been demonstrated by any of the allegations of error, the judgment of the trial court is hereby affirmed.

Affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 360 N.E.2d 588.