Gregory L. HUGHETT, Appellant,

v.

STATE of Indiana, Appellee.

No. 55S00–8904–CR–360.

Supreme Court of Indiana.

Aug. 8, 1990.

. 

─────────

William Van Der Pol, Jr., McNutt, Hurt & Blue, Martinsville, Michael Ksenak, Harris & Currens, Mooresville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Attempted Murder, a Class A felony, for which he was sentenced to the standard term of thirty (30) years enhanced by thirty (30) years by reason of his habitual offender status; Battery Resulting in Serious Bodily Injury, a Class C felony; and Battery with a Deadly Weapon, a Class C felony. He was sentenced to eight (8) years each on these counts, the sentences to be served concurrently.

■ We note *sua sponte* that the trial court erred in entering judgment and sentence upon the lesser-included battery offenses. Battery is not an inherently included offense of attempted murder, but where, as here, the charging instrument alleges attempted murder by means of infliction of a wound, battery is an included offense. *Leon v. State* (1988), Ind., 525 N.E.2d 331. (The State argued at sentencing that the battery offenses were included within the attempted murder as charged.) "Where the conviction of the greater crime cannot be had without conviction of the lesser crime, the double jeopardy clause bars separate conviction and sentencing on the lesser crime when sentencing is imposed on the greater one." *Mason v. State* (1989), Ind., 532 N.E.2d 1169, 1172, *cert. denied,* — U.S. —, 109 S.Ct. 1960, 104 L.Ed.2d 428; *see also* Ind.Code § 35-38-1-6. Appellant thus cannot be convicted and sentenced on both the attempted murder and battery offenses.

The facts are: On the evening of March 19, 1988, Brian Walls, the victim in this case, was accosted in front of his Mooresville home by his neighbor, Tim LeMaster, accompanied by appellant and by LeMaster's brother, Greg Fraley. They confronted Walls with having complained through his father to LeMaster's landlord in regard to late-night boisterous behavior, loud music, and littering. They threatened Walls with physical violence if the complaints were to be repeated.

After appellant and the other two men left, Walls went into his house and telephoned his father, John Walls, who came over to discuss the incident. They left to buy cigarettes, and when they returned, they were accosted by LeMaster and Fraley, who belligerently expressed anxiety regarding possible ejection by his landlord as a consequence of the complaints. John Walls admitted he had spoken to the landlord, then said the conversation was over and that he was going inside the house.

Both LeMaster and Fraley then began assaulting John Walls, whereupon Brian Walls restrained LeMaster in a bear hug. At this time, appellant jumped off the porch of LeMaster's apartment house and tackled Brian Walls from behind. Appellant produced a folding "butterfly" knife and while they were scuffling on the ground stabbed Brian several times. John Walls then managed to break free from LeMasters and Fraley, and appellant ran away.

Brian was treated at the scene by emergency medical technicians, who transported him to the emergency room of the Hendricks County Hospital. There he was treated for ten lacerations over his lower right back, right shoulder, right elbow, and right hand. The treating physician later testified the wounds were potentially life-threatening and appeared to have been inflicted from behind.

After appellant ran from the scene, he appeared, covered with blood, at the home of a friend and stated he had been in a fight and had injured the other person. He made plans to leave town, but just as he was starting to drive away with his girl-friend he was arrested by Mooresville police. The arresting officers later testified that a butterfly knife, stained with blood and locked open, was found in the car with appellant, whose hands and shirt still were bloody. They also testified appellant smelled of alcohol and appeared to be intoxicated, yet was able to walk unaided and even had the presence of mind, en route to the jail, to remark "Nobody ever better f..k with me 'cause I'm bad."

Appellant contends the trial court erred in modifying his Tendered Instruction No. 3 concerning his intoxication at the time of the crime. In pertinent part, the instruction as tendered read:

"If you find that the Defendant was intoxicated to such an extent that you have reasonable doubt as to whether he was capable of knowingly or intentionally committing the acts charged, then you should find the Defendant not guilty of the offense(s) [charged]."

The trial court modified "you should find" to state "you may find," leaving the remainder intact, and read the instruction to the jury.

Appellant argues the trial court's elimination of the instruction's mandatory nature allowed the jury to convict him in the presence of a reasonable doubt as to the capacity to form the requisite intent. In support, he cites *Terry v. State* (1984), Ind., 465 N.E.2d 1085, 1088, for the proposition that "if intoxication ... renders that individual so completely *non compos mentis* that he has no ability to form intent, then ... he cannot be held accountable for his actions...." He claims that, when coupled with the "overwhelming" evidence of his intoxication, this defect in the instruction requires reversal of his conviction.

■ Acknowledging that the "should" wording used in appellant's tendered instruction has been approved by this Court, *Melendez v. State* (1987), Ind., 511 N.E.2d 454, the State argues any error resulting from the change was harmless because the instruction's introductory paragraph told the jury, "you must be convinced beyond a reasonable doubt that the Defendant knowingly or intentionally committed the acts charged," and because the evidence did not require giving an intoxication instruction. An error in a particular instruction will not warrant reversal unless, due to the error, the entire charge misled the jury. *Id.*

■ We find the permissive wording was harmless error, without deciding whether it was cured by the "must be" language used earlier in the instruction. To negate intent, intoxication must be of such a degree as to deprive the defendant of the power to deliberate or to form the necessary design or guilty intent. *Id.* An intoxication defense cannot prevail if the evidence shows the defendant had the ability to perform tasks such as attempting to hide his crime, to give instructions to others, or to take himself from place to place immediately following the crime. *Montgomery v. State* (1988), Ind., 521 N.E.2d 1306, *cert. denied*, 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83; *Terry, supra.*

■ In the case at bar, while the evidence was undisputed that appellant was intoxicated at the time of his arrest, the evidence failed to show that his intoxication was so "overwhelming" as to negate the presence of *mens rea.* To the contrary, in view of appellant's ability to engage offensively in physical combat, to disengage and leave the scene just as the victim was about to be rescued by his father, to find his way to a friend's home seeking aid, and to make and implement plans to leave town, the evidence clearly demonstrates that appellant's intoxication did not rise to the level required to negate intent. Any error arising from the permissive wording used in Instruction No. 3 thus was not reversible error. Moreover, notwithstanding appellant's contention to the contrary, the evidence was sufficient to support the jury's finding of intent to commit murder implicit in his conviction for attempted murder. *Melendez, supra.*

■ Appellant argues the evidence was insufficient to show the victim sustained serious bodily injury because he was not hospitalized, his vital signs remained within normal ranges, and he was never in danger of dying from his wounds. This contention has been rendered moot by our finding above that the convictions for the lesser-included battery offenses should be merged into the greater offense. Nevertheless, when medics arrived they noted the victim was bleeding from eight stab wounds, had trouble breathing, and was starting to go into shock. Some wounds were deep enough to have damaged major blood vessels and organs had the cuts been located less fortuitously. The victim also missed

work for two weeks spent recovering. Under these facts, the jury clearly was within its prerogative in finding serious bodily injury resulted from appellant's battery of the victim. *See Lipka v. State* (1985), Ind., 479 N.E.2d 575.

The evidence was sufficient to support appellant's convictions.

 Appellant contends the trial court erred in admitting State's Exhibits Nos. 9, 10, 10A, 11, and 12. Exhibits 11 and 12 were envelopes containing blood samples of the victim and of appellant, respectively; 10A was the bloodstained butterfly knife; and Nos. 9 and 10 were a cardboard box and an evidence bag, respectively, used to contain the knife. He correctly cites *Gorman v. State* (1984), Ind., 463 N.E.2d 254 for the proposition that the State shoulders the burden of showing the continuous whereabouts of physical evidence and that this burden is enhanced where the evidence is fungible. Because the vials of blood and the substance comprising the bloodstain on the knife were fungible items, appellant argues the chain of custody was not shown sufficiently to provide a reasonable assurance that the samples passed through various hands in an undisturbed condition.

The exhibits first were in the custody of a police officer, who delivered them to a clerk at the Indiana State Police Laboratory, who then put them into an evidence vault; later they were removed from the vault for testing by the forensic serologist, then replaced in the vault and later returned by the clerk to the officer who initially delivered them for testing. Appellant argues that because the lab clerk who logged in and handled the exhibits between the police officer and the vault did not testify, a gap existed in the chain of custody and because the exhibits were used to show that the blood on the knife came from the victim and not from appellant, this testimonial gap in custody renders it too uncertain that the exhibits were not altered or misidentified.

However, the testimony of the officer and the serologist clearly demonstrate that the knife and the blood samples were kept in containers which were tape sealed and marked with initials when closed, and that these marked seals were intact when received by the serologist, who after testing added his own seal upon reclosing the containers. This testimony tends to show the exhibits were opened only by the serologist when tested and by the officer in court. Such a marked-sealing procedure indicates sufficient precaution against tampering. *See Schlabach v. State* (1984), Ind.App., 459 N.E.2d 740.

A sufficient chain of custody was established for State's Exhibits Nos. 9, 10, 10A, 11 and 12. There was no error in their admission.

 Appellant contends the trial court erred in allowing the deputy prosecutor to give his final argument after having given testimony in the case. Prior to the admission of State's Exhibits Nos. 3, 4, 5, and 6, the deputy prosecutor took the stand and related how the exhibits, consisting of the bloody clothing worn by the victim, had come into the State's possession, to wit: that after telephoning the deputy prosecutor, the victim had delivered the clothing in a trash bag to the prosecutor's office, whereupon the deputy prosecutor had stored the bag and its contents within that office until trial. Appellant's objection to the admission of the clothing, based upon potential access by many people to the office where it had been stored, was overruled and the clothing was exhibited to the jury.

Appellant subsequently objected to the deputy prosecutor delivering his final argument, maintaining it would violate Rule 3.7 of the Rules of Professional Conduct which states, in pertinent part:

"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client."

Appellant argues the deputy prosecutor should have known his testimony would be necessary to establish the foundation for admission of the clothing, which was not an uncontested issue, and therefore another deputy should have tried the case. He acknowledges our decision in *Worthington v. State* (1980), 273 Ind. 499, 405 N.E.2d 913, *cert. denied* (1981), 451 U.S. 915, 101 S.Ct. 1991, 68 L.Ed.2d 306, where we found no impropriety in the trial deputy's rehabilitative testimony regarding the plea bargain of a previous State's witness. Appellant asserts nonetheless that in the case at bar, the prosecutor's testimony concerned not a collateral issue but was essential to the admission of State's Exhibits Nos. 3, 4, 5, and 6.

However, as the trial court pointed out in ruling upon appellant's objections both to the exhibits' admission and to the deputy prosecutor's giving final argument, these exhibits consisted of non-fungible items and thus no strict demonstration of chain of custody was required. *Gorman, supra.* Moreover, the court prohibited the deputy prosecutor from commenting on his own testimony during final argument, and appellant makes no showing that this restriction was violated.

Before an appellant is entitled to reversal, he must affirmatively demonstrate error prejudicial to his substantial rights. *Sharp v. State* (1989), Ind., 534 N.E.2d 708. Here, while it appears that to comply with the letter of Rule 3.7 the deputy prosecutor could have told the victim to deliver the clothing to the Sheriff's office instead of to his own, or perhaps even resisted altogether the temptation to admit and exhibit the bloodstained clothing before the jury, we fail to see any substantial prejudice accruing to appellant from the deputy prosecutor's testimony in the case.

We thus find no reversible error in the trial prosecutor's delivery of final argument subsequent to his testimony in this case.

Appellant contends the trial court erred in refusing to allow him to testify at the sentencing hearing as to statements made to him by LeMaster and Fraley. Shortly after beginning a narrative account of the events of the night of the crime, appellant was instructed by the court to testify only to events of which he had personal knowledge. He cites *Busam v. State* (1983), Ind.App., 445 N.E.2d 118 for the proposition that the rules of evidence used at trial are not strictly applicable to sentencing hearings such that hearsay evidence may be allowed. He claims he was prejudiced because having not testified at trial, the sentencing hearing was his only opportunity to state his version of the incident, and because he was so intoxicated during the incident that he should have been entitled to testify as to statements by other eyewitnesses as to the events which occurred.

 Appellant is correct that hearsay evidence may be admitted in a sentencing hearing. *Lasley v. State* (1987), Ind., 510 N.E.2d 1340. Here, however, appellant's contention has been waived. After the trial court restricted his testimony to events within his personal knowledge, upon his attorney's advice not to testify at sentencing, appellant decided, and stated to the trial court, that he would forego the opportunity to relate his version of events. He cites no authority to the effect he should have been allowed to relate his version out of the mouths of others. In the context of his refusal to testify essentially on Fifth Amendment grounds, his assertion of error has therefore been waived. *See Reichard v. State* (1987), Ind., 510 N.E.2d 163.

While the trial court could have allowed appellant's hearsay testimony at sentencing, any error in its refusal was waived by appellant's contemporaneous decision to remain mute.

Appellant contends the trial court erred in the habitual offender phase by admitting over his objection State's Exhibits Nos. 30 and 33 consisting of documents used to connect him to prior felony convictions. Exhibit No. 30 is comprised of certified copies of a sentencing order and a commit-

ment order pertaining to a 1985 conviction for felony operating while intoxicated. Each document bears the certification stamp and seal of the court clerk. The copy of the sentencing order, as offered, included a copy of appellant's drivers license in the upper left corner where it had been stapled to the original. Appellant argues that because the copy of the drivers license was not separately certified, Exhibit 30 should not have been admitted.

The record reflects, however, that upon appellant's objection the court ordered the drivers license deleted from the copy of the sentencing order before showing the exhibit to the jury. Exhibit 30, as contained in the record, is a copy of the sentencing order with the drivers license redacted. We thus see no merit to appellant's argument and no error in the admission of Exhibit No. 30.

Exhibit No. 33 consists of a certification page, two pages of criminal transcript, and three copies of fingerprint cards, one each from 1975, 1978, and 1983. The State introduced these documents in conjunction with the testimony of a fingerprint expert in order to identify appellant as the person convicted of the prior felonies alleged. Appellant argues the certification page was not attached to the documents it purported to certify and cites testimony of the sponsoring witness to that effect. Other testimony of the same witness, however, makes it clear the certification page was attached to the others with a paper clip and became separated during her testimony.

Appellant additionally argues the certification page purported to certify a criminal transcript which was not attached to it and, paradoxically, that the exhibit contains a document entitled "Criminal Transcript" which was not certified. Taken together, these allegations answer each other and suggest, as borne out by examination of the record, that the criminal transcript is indeed properly certified on the exhibit's cover page. Appellant also maintains the copy of the fingerprint card from 1978 lacks the offender's date of birth and thus was not covered by the certification page, which included such date, and moreover is not connected on its face to any of appellant's prior convictions. Nevertheless, it was properly certified and authenticated as a copy of an official police record. *See Logston v. State* (1989), Ind., 535 N.E.2d 525.

We see no error in the admission of State's Exhibits Nos. 30 and 33.

■ Appellant contends the trial court erred in removing from the jury's consideration the issue of self-defense by refusing his Tendered Final Instructions Nos. 1 and 2 and giving instead the court's Final Instruction No. 20. Prior to hearing any evidence in the case, the trial court read to the jury appellant's tendered preliminary instructions on self-defense. At the close of all the evidence, the State objected to instructing the jury on self-defense because such a defense was not supported by the evidence. The trial court agreed and refused appellant's tendered Final Instructions Nos. 1 and 2, and read instead its own Instruction No. 20 telling the jury that the issue of self-defense was removed from their consideration.

■ Appellant mischaracterizes the prosecution's objection to his tendered instructions as a motion for judgment on the evidence as to the issue of self-defense. Accordingly, citing *State v. Lewis* (1981), Ind., 429 N.E.2d 1110, *cert. denied* (1982), 457 U.S. 1118, 102 S.Ct. 2931, 73 L.Ed.2d 1331, he argues his instructions should have been refused only in the complete absence of any evidence favoring such a defense. The proper standard for giving or refusing a self-defense instruction, however, is whether the defendant reasonably believed that force was necessary to defend himself (or others) from an imminent threat of unlawful force; deadly force is justifiable only to prevent serious bodily injury. *Whipple v. State* (1988), Ind., 523 N.E.2d 1363; Ind.Code § 35-41-3-2.

■ Moreover, self-defense is not available to one who was the initial aggressor. *Rozika v. State* (1988), Ind., 520 N.E.2d 1267; Ind.Code § 35-41-3-2(d)(3). Here, the evidence is uncontroverted that appellant injected himself into a confrontation

involving unarmed men, attacked the victim from behind and stabbed him repeatedly with a knife. Appellant's actions clearly preclude any claim of self-defense. The trial court did not err in so instructing the jury.

■ Appellant contends the trial court erred in allowing a witness to answer questions calling for "medical conclusions." Dale Ramsey, a certified Emergency Medical Technician (E.M.T.) assigned to the ambulance which transported the victim to the hospital, testified for the State regarding his actions taken and observations made while treating the victim at the scene. The witness was asked to explain what he thought was the significance of the victim's difficulty breathing, to which he replied possible injury to the victim's chest or going into shock; which of the knife wounds concerned him the most, to which he responded the loss of blood and the wounds to the victim's back; and what specific risk he associated with the back wounds, to which he replied their location over the spinal area, the possibility of shock, and the patient's blood loss.

■ Appellant argues this testimony was inadmissible because in it the witness speculated diagnoses and conclusions. He cites cases holding it improper for a lay witness to give a conclusion as to an issue of ultimate fact, *e.g. Springer v. State* (1982), Ind., 437 N.E.2d 998 and *Hunter v. State* (1977), 172 Ind.App. 397, 360 N.E.2d 588, *cert. denied*, 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193. The prevailing rule in this jurisdiction, however, is that such testimony is admissible within the discretion of the trial court. *Ferguson v. State* (1985), Ind., 478 N.E.2d 673.

■ At any rate, the testimony does not constitute conclusions as to ultimate facts; rather, it is descriptive of the reasons why the witness took the actions he did, *i.e.,* stopped the bleeding, administered oxygen, treated for shock, placed the victim on a backboard, and transported him to the hospital. Moreover, the record reveals the witness was certified as an E.M.T., had six years of experience, and testified his training covered the particular subject matter of his testimony. Whether a witness is qualified to present expert testimony is within the trial court's discretion. *Swoaks v. State* (1988), Ind., 519 N.E.2d 149. Here, considering the qualifications of the witness and the context of his testimony, its admission was well within the court's discretion.

■ Appellant contends the trial court erred in allowing John Walls and Nancy Lane, family members of the victim, Brian Walls, to testify at the sentencing hearing as to the effects of the crime upon themselves. He argues that under *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied* (1986), 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723, a "victim" of a crime refers only to the immediate and actual victim of the offense, and therefore the trial court should not have found Brian Walls' family members entitled to testify at sentencing as victims of the crime. *Wallace* is inapposite here, however, as it held that the victim sentencing input requirement of the statute, now Ind.Code § 35–38–1–9, was not intended to expand the rights of the defendant; *Wallace* thus limits what *must* be, rather than what *may* be, considered at sentencing.

We need not address here, however, the propriety or scope of victim impact statements, because appellant fails to demonstrate that he was prejudiced in any way by admission of the complained-of testimony. Further, an examination of the record shows these witnesses testified almost exclusively as to the harm they observed suffered by Brian Walls himself. The only harm the witnesses mentioned having suffered themselves was that the crime had made them more cautious. To show reversible error, an appellant must affirmatively demonstrate prejudice to his substantial rights. *Sharp, supra.* We see little, if any, undue prejudice to appellant from the remarks made by these witnesses. Nowhere in his lengthy and thoughtful sentencing statement does the trial court mention harm to the victim's family as a basis for the sentence rendered. Appellant has demonstrated no error by the admission at

sentencing of the remarks of the victim's family members.

This cause is remanded to the trial court with instructions to merge the lesser-included battery convictions into the attempted murder conviction; in all other respects the judgment below is affirmed.

SHEPARD, C.J., DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.