**Rafael MELENDEZ, Appellant (Defendant Below)**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45S00–8602–CR–191.

Supreme Court of Indiana.

Aug. 20, 1987.

Robert R. Garrett, Public Appellate Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Following a trial by jury, appellant Rafael Melendez was convicted of murder, Ind. Code § 35-42-1-1 (Burns 1984 Supp.). The court sentenced him to forty years in prison. He raises three issues on direct appeal:

1) Whether the trial court erred in admitting two photographs of the victim which showed incisions and sutures made in an attempt to save the victim's life;

2) Whether the trial court erred in instructing the jury on voluntary intoxication, and

3) Whether the evidence was sufficient to prove that Melendez intended to kill the victim.

The evidence showed that Melendez and Jorge Villanueva went to Frank Pilipow's home several times on November 18, 1984. Melendez and Pilipow drank together during these visits. During the last visit, Melendez picked up a stick as he and Villanueva entered Pilipow's apartment. Fearing trouble, Villanueva left.

Pilipow's sister, Josephine Minchuk, lived in an apartment two floors above Pilipow. She visited her brother regularly. When she went downstairs on that afternoon, she saw her brother lying on the floor bleeding from wounds to his head and back. A man in a brown coat was standing over the victim. Seeing Minchuk on the stairs, the man ran out another door.

After arriving at the home of Ramon Vera, Melendez told Vera and Villanueva that he had stabbed Pilipow about five or six times and killed him. Police arrived and arrested Melendez at Vera's apartment, where they recovered two knives. One knife belonged to Melendez and was found under a stereo where he had thrown it. The other matched a set of knives found in the victim's apartment; it was discovered in appellant's pocket.

Melendez gave a statement describing a fight he had had with the victim. He said that Pilipow shoved him, and that he had started to knock Pilipow back. He could remember nothing thereafter, until he saw the victim lying on the floor and Minchuk entering the apartment.

## I. Photographs

Melendez alleges error in the admission of two photographs depicting the victim's body after doctors had performed surgery and sutured wounds in an attempt to save the victim's life. He argues that the photographs were improperly admitted because they depicted both those wounds caused by physicians and those wounds caused by the murder weapon. Melendez contends that, without further explanation, the jury could be confused about which wounds were allegedly inflicted by him.

Admission of photographs is within the discretion of the trial court; its decision will not be overturned absent a showing of clear error. *Fine v. State* (1986), Ind., 490 N.E.2d 305, 307. Photographs which show the victim in a natural state following death generally are relevant and admissible. *Loy v. State* (1982), Ind., 436 N.E.2d 1125, 1128. Photographs which show the victim's body altered by attempts at resuscitation have been held admissible when accompanied by testimony which differentiates wounds caused by physicians from those attributed to the defendant. *Romine v. State* (1983), Ind., 455 N.E.2d 911, 916 (pathologist identified those wounds caused by physicians and those caused by murder weapon); *Simpson v. State* (1978), 269 Ind. 495, 503, 381 N.E.2d 1229, 1234 (both operating surgeon and pathologist indicated which marks were surgical and which were caused by shotgun blast).

In this case, the victim was not photographed at the scene of the crime. Emergency personnel were involved in an urgent

attempt to save his life. The only photographic evidence available to show the nature and extent of the victim's wounds were those taken after medical treatment had been administered. Melendez argues that these photographs should not have been admitted, because neither the pathologist nor the surgeon testified.

The State presented sufficient evidence to distinguish between those wounds caused by medical treatment and those caused by the murder weapon. The parties stipulated to admission of the pathologist's report, which contained a detailed description of the wounds and their causes. The photographs were graphic illustrations of the pathologist's report.

The photographs were further explained by the victim's nephew, Wally Minchuk, who saw the victim directly following the incident and before any medical treatment had been rendered. Minchuk pointed out those wounds which he observed at that time, and he differentiated them from those which had been inflicted in later attempts to save the Pilipow's life. One photograph which the State offered depicted a wound Minchuk could not identify. The judge excluded that photograph because the wound was not sufficiently distinguished from the surgical incision. The trial judge exercised great care in admitting only that evidence which clearly demonstrated the origin of each wound, and we are satisfied that the jury was not misled.

### II. Instruction on Voluntary Intoxication

■ The defense tendered two instructions on voluntary intoxication. The trial court modified one of them and instructed the jury, over the defendant's objection, as follows:

Under the law of this State, Voluntary Intoxication from drugs or alcohol is not a defense to a crime. The Defendant charged with a crime who alleges he was voluntarily under the influence of any drug or alcohol at the time of the commission of that crime may not raise that fact as a defense even if the act charged was committed while his inhibitions were loosened or removed by the use of drugs or alcohol.

Intoxication may be so great, however, that the defendant is not capable of entertaining the intent necessary for the commission of the crime.

If you find in this case that the defendant was so intoxicated from drugs or alcohol that he was not capable of forming the intent to commit Murder, you should find the defendant not guilty of Murder.

Further, if you find that the defendant was so intoxicated from drugs or alcohol that he was not capable of forming the intent to commit Voluntary Manslaughter, you should find the defendant not guilty of Voluntary Manslaughter.

Appellant argues that the statement "Voluntary Intoxication ... is not a defense to a crime" is an incorrect statement of the law and that the instruction was confusing to the jury.

The law on the defense of involuntary intoxication was clarified in *Terry v. State*, Ind., 465 N.E.2d 1085 (1984). This Court held that "[a] defendant in Indiana can offer a defense of voluntary intoxication to any crime." *Id.* at 1088. *Terry* declared Ind.Code § 35-41-3-5(b), which provided that "[v]oluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase 'with intent to' or 'with an intention to,'" was void and without effect.[1]

---

1. Jury instructions which were formulated according to statutory language before the *Terry* decision were reviewed by this Court several times immediately following *Terry*. This Court generally found that there was insufficient evidence of intoxication to warrant any instruction, thus error in the voluntary intoxication instruction given was harmless. *See, e.g., Cheney v. State* (1985), Ind., 486 N.E.2d 508, 512–513; *Eagan v. State* (1985), Ind., 480 N.E.2d 946, 951–952; *Bowen v. State* (1985), Ind., 478

N.E.2d 44, 46; *Anderson v. State* (1984), Ind., 469 N.E.2d 1166, 1168.

In this case, though evidence of intoxication was modest, the trial court regarded it as sufficient to warrant an instruction. Melendez testified that he started the morning drinking beer and watching television, and he "did some heroin" at approximately 11 a.m. While at Pilipow's, he drank more beer, wine and whiskey. In addition, Villanueva testified that both the

Of course, voluntary intoxication differs from an affirmative defense, such as entrapment or necessity. An affirmative defense admits all the elements of the crime but proves circumstances which excuse the defendant from culpability. Voluntary intoxication, on the other hand, negates the essential element of intent. In this sense, "it is not intoxication that is a defense, but rather that intoxication may be considered as would any other mental incapacity of such severe degree that it would preclude the ability to form intent." *Butrum v. State* (1984), Ind., 469 N.E.2d 1174, 1176.

Though this difference has perhaps led to some semantic confusion, this Court has often stated that voluntary intoxication is a defense to any crime. *Bowen v. State* (1985), Ind., 478 N.E.2d 44, 46; *Anderson v. State* (1984), Ind., 469 N.E.2d 1166, 1168. Additionally, the Court of Appeals has specifically disapproved of an instruction that stated "voluntary intoxication is not available as a defense to robbery." It noted, though, that the instruction was given without objection and that its use was not included in the Motion to Correct Error. The jury was instructed on the elements of robbery, the definitions of knowingly and intentionally, and the State's burden of proof to show intent. Though stating that "the instruction should not be given in the quoted form over objection," the Court of Appeals found that giving the instruction did not rise to fundamental error. *Hibshman v. State* (1985), Ind.App., 472 N.E.2d 1276, 1279.

In this case, the sentence in the trial court's instruction that voluntary intoxication is not a defense was incorrect. A single error, however, need not result in reversal. "An error in a particular instruction will not warrant a reversal unless it is of such a nature that the entire charge of which it is a part misled the jury." *Cheney v. State* (1985), Ind., 486 N.E.2d 508, 513 (citation omitted).

Here, the jury was instructed "if you find that the defendant was so intoxicated

... that he was not capable of forming the intent to commit Murder [or Voluntary Manslaughter], you should find the defendant not guilty...." This is a correct statement of the law. The jury was also instructed on the elements of murder and voluntary manslaughter, the definitions of knowingly and intentionally, and the State's burden to prove each element of the crime beyond a reasonable doubt.

"Any factor which serves as a denial of the existence of *mens rea* must be considered by a trier of fact before a guilty finding is entered." *Terry,* 465 N.E.2d at 1088. Though not specifically labeled as a defense, the jury was instructed that Melendez's intoxication was a factor to be considered in determining his guilt or innocence. While we do not approve of the specific wording of the instruction, taken as a whole it properly placed the issue of intoxication before the jury.

### III. Sufficiency of the Evidence

Melendez contends that the evidence was insufficient to sustain a conviction because it showed that he was so intoxicated as to be unable to form an intent to kill.

■ When this Court reviews the sufficiency of the evidence, we will affirm the conviction if, considering only the probative evidence and the reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Jackson v. State* (1981), Ind., 426 N.E.2d 685. The necessary intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

■ To negate intent, intoxication must be of such a degree as to deprive the defendant of the power to deliberate or to form the necessary design or guilty intent. Whether a defendant's intoxication prevented him from forming the requisite intent is a question of fact for the jury and

defendant and the victim were drunk and that Melendez "looked like he was a little bit crazy." Police also found a syringe and other parapher-

nalia in appellant's possession when he was arrested. Thus, giving an instruction on intoxication was supported by some evidence.

one upon which the defendant bears the burden. *Wagner*, 474 N.E.2d at 488.

■ The only evidence supporting Melendez's claim of intoxication was his own testimony that he had consumed alcohol and heroin and the testimony of Villanueva that both the defendant and the victim were drunk and belligerent. The evidence also showed that Melendez armed himself with a stick before entering the victim's apartment, possessed the physical strength and coordination to overpower the victim and stab him numerous times, fled when seen by a witness and later confessed his guilt to acquaintances and police.

Presented with this evidence, the jury concluded that Melendez possessed the requisite intent to kill. This conclusion was supported by sufficient evidence.

The judgment is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.