95 F.3d 1154
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Rafael MELENDEZ, Petitioner-Appellant,
v.
Al C. PARKE, Superintendent, Indiana State Prison,
Respondent-Appellee.
 No. 95-2332.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 26, 1996.*
Decided Aug. 8, 1996.
 
 Before RIPPLE, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Rafael Melendez was charged in Indiana state court with the murder of Frank Pilipow in November 1984. In August 1985, Melendez received a jury trial and was convicted of the murder. He was sentenced in September 1985 to forty years in prison. Melendez filed a motion to correct errors in November 1985, which was denied by the trial court. Melendez appealed both the conviction and the denial of his motion to correct errors. In 1987, the Supreme Court of Indiana unanimously affirmed his conviction, concluding that the trial court did not commit reversible error under Indiana law in instructing the jury on voluntary intoxication and that the evidence was sufficient to prove that Melendez intended to kill the victim. Melendez v. State, 511 N.E.2d 454 (Ind.1987). Melendez eventually filed a state post-conviction petition, which alleged error in the voluntary intoxication instruction, and ineffective assistance of counsel. This petition was rejected by the state trial court in August 1993, and Melendez did not appeal. Melendez filed a pro se petition pursuant to 28 U.S.C. § 2254 in federal district court in October 1994. The district court denied the petition, and Melendez appeals.
 
 
 2
 It appears that Melendez did not raise a constitutional claim about the instruction to the state courts, and failed to repeat his claim of insufficient evidence in his post-conviction petition. However, the state does not argue procedural default or non-exhaustion. We need not explore these issues, because it is quite simple to dismiss both of Melendez's claims on the merits.[1]
 
 
 3
 Melendez claims that Jury Instruction # 13 denied him the right to present the jury with his defense that, due to voluntary intoxication, he lacked intent to commit murder. He further argues that the instruction allowed the state to convict him without proof beyond a reasonable doubt of the mens rea element of murder.
 
 
 4
 The jury instruction challenged by Melendez states in its entirety:
 
 
 5
 Under the law of this State, Voluntary Intoxication from drugs or alcohol is not a defense to a crime. The Defendant charged with a crime who alleges he was voluntarily under the influence of any drug or alcohol at the time of the commission of that crime may not raise that fact as a defense even if the act charged was committed while his inhibitions were loosened or removed by the use of drugs or alcohol.
 
 
 6
 Intoxication may be so great, however, that the defendant is not capable of entertaining the intent necessary for the commission of the crime.
 
 
 7
 If you find in this case that the defendant was so intoxicated from drugs or alcohol that he was not capable of forming the intent to commit Murder, you should find the defendant not guilty of Murder.
 
 
 8
 Further, if you find that the defendant was so intoxicated from drugs or alcohol that he was not capable of forming the intent to commit Voluntary Manslaughter, you should find the defendant not guilty of Voluntary Manslaughter.
 
 
 9
 The Supreme Court of Indiana determined that the statement that "Voluntary Intoxication ... is not a defense to a crime" was erroneous under state law. Id. at 456-57. The Court explained that voluntary intoxication, while not an affirmative defense, is a defense in that it may be "of such severe degree that it would preclude the ability to form intent." Id. at 457 (quotation omitted). However, the Court also held that the erroneous statement did not make the instruction as a whole misleading to the jury. Id. According to the Court, the jury was instructed correctly under state law that " 'if you find that the defendant was so intoxicated ... that he was not capable of forming the intent to commit Murder [or Voluntary Manslaughter], you should find the defendant not guilty.' " Id. The Court concluded that the instruction "as a whole [ ] properly placed the issue of intoxication before the jury." Id.[2]
 
 
 10
 Even if the trial court had instructed the jury both that "voluntary intoxication is not a defense" and that voluntary intoxication cannot be considered in determining intent--a much less favorable situation to Melendez than the one he actually faced--the instructions would not have given rise to a due process problem. That much is clear after Montana v. Egelhoff, 116 S.Ct. 2013 (1996). The Supreme Court held that an instruction that a jury "could not consider [defendant's] 'intoxicated condition in determining the existence of a mental state which is an element of the offense' " does not violate the Due Process Clause, because it offends neither a fundamental principle of fairness nor the requirement that the state prove mens rea beyond a reasonable doubt. Id. at 2016-23 (plurality opinion); id. at 2024-25 (Ginsburg, J., concurring in the judgment). If anything, an instruction precluding consideration of voluntary intoxication on the issue of intent accords with the common-law tradition that "a drunken offender shall have the same judgment as if he were in his right senses." Id. at 2018 (plurality opinion) (quotation omitted); see also id. at 2025 (concurring opinion). In sum, the Due Process Clause does not prevent states from either allowing or disallowing consideration of voluntary intoxication on the issue of intent. Id. at 2023-24 (plurality opinion); id. at 2024-25 (concurring opinion). In light of Egelhoff, we reject Melendez's claims that the instructions denied him due process either by depriving him of his ability to present a defense or by relieving the state of its burden to prove his intent beyond a reasonable doubt.
 
 
 11
 Related to Melendez's first claim is his second and final claim on appeal--that there was insufficient evidence of intent to find him guilty of murder. The Supreme Court of Indiana summarized the evidence in Melendez's case as follows:
 
 
 12
 The evidence showed that Melendez and Jorge Villanueva went to Frank Pilipow's home several times on November 18, 1984. Melendez and Pilipow drank together during these visits. During the last visit, Melendez picked up a stick as he and Villanueva entered Pilipow's apartment. Fearing trouble, Villanueva left.
 
 
 13
 Pilipow's sister, Josephine Minchuk, lived in an apartment two floors above Pilipow. She visited her brother regularly. When she went downstairs on that afternoon, she saw her brother lying on the floor bleeding from wounds to his head and back. A man in a brown coat was standing over the victim. Seeing Minchuk on the stairs, the man ran out another door.
 
 
 14
 After arriving at the home of Ramon Vera, Melendez told Vera and Villanueva that he had stabbed Pilipow about five or six times and killed him. Police arrived and arrested Melendez at Vera's apartment, where they recovered two knives. One knife belonged to Melendez and was found under a stereo where he had thrown it. The other matched a set of knives found in the victim's apartment; it was discovered in appellant's pocket.
 
 
 15
 Melendez gave a statement describing a fight he had had with the victim. He said that Pilipow shoved him, and that he had started to knock Pilipow back. He could remember nothing thereafter, until he saw the victim lying on the floor and Minchuk entering the apartment.
 
 
 16
 Melendez, 511 N.E.2d at 455. The Court found that the jury had sufficient evidence to conclude that Melendez possessed the requisite intent to kill. Id. at 458. In particular, the Court cited the evidence "that Melendez armed himself with a stick before entering the victim's apartment, possessed the physical strength and coordination to overpower the victim and stab him numerous times, fled when seen by a witness and later confessed his guilt to acquaintances and police." Id. The Court also suggested that the jury could have discounted the evidence of voluntary intoxication, observing that "[t]he only evidence supporting Melendez's claim of intoxication was his own testimony that he had consumed alcohol and heroin and the testimony of Villanueva that both the defendant and the victim were drunk and belligerent." See id. at 457-58.
 
 
 17
 Melendez contends that many intoxicated individuals perform actions, even ones involving strength and coordination, without intending to do so, and thus that the jury would have been wrong to infer intent to kill from his actions while intoxicated. However, merely because many intoxicated individuals might be able to kill and otherwise act without intent to do so does not prove that Melendez likewise did not intend to kill. Melendez fails to show that there was such an overwhelming amount of evidence that his intoxication prevented him from forming the requisite intent that the jury had to acquit him under the instructions given. The jury could reasonably ignore or discount the evidence of voluntary intoxication in determining whether he possessed the intent to kill. The remaining evidence was sufficient for a reasonable jury to infer the requisite intent to kill. Melendez, 511 N.E.2d at 458.[3]
 
 
 18
 The judgment denying Melendez's habeas petition is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Petitioner-appellant has filed such a statement. Upon consideration of that statement, the court has concluded that oral argument would not be helpful, and the appeal is submitted on the briefs and the record
 
 
 [1]
 On April 24, 1996, while this case was pending on appeal, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. 104-132, 110 Stat. 1214). Title I of this Act significantly curtails the scope of federal habeas corpus review. We need not decide in this case to what extent the amendments in the Act apply to petitions pending when the Act was signed into law, because, even under the more expansive scope of review permitted prior to the Act, the petitioner in this case is not entitled to federal habeas corpus relief
 
 
 [2]
 In reaching this conclusion, the Court noted that "[t]he jury was also instructed on the elements of murder and manslaughter, the definitions of knowingly and intentionally, and the State's burden to prove each element of the crime beyond a reasonable doubt." Id. The Court observed that the Court of Appeals of Indiana had found that such instructions kept an erroneous instruction on voluntary intoxication from rising to the level of fundamental error under Indiana law. Id. (citing Hibshman v. State, 472 N.E.2d 1276, 1279 (Ind.App.1985.))
 
 
 [3]
 Melendez observes that during trial, the trial judge found that there was evidence of self-defense and ruled that Melendez was allowed to introduce evidence of the victim's aggression. Indeed, the judge instructed the jury on self-defense, and emphasized that the state must prove beyond a reasonable doubt that the defendant was not acting in self-defense. However, the introduction of evidence that Melendez acted in self-defense did not require the jury to find that Melendez acted in self-defense, or that he lacked the requisite intent to kill. Here again, Melendez fails to show that there was overwhelming evidence that he lacked the intent to kill