

FILED

Jan 13 2017, 8:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Rodney Tyms-Bey,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 13, 2017

Court of Appeals Case No.
49A05-1603-CR-439

Appeal from the Marion Superior Court

The Honorable Annie Christ-Garcia, Judge

Trial Court Cause No.
49G24-1408-FD-38469

**Baker, Judge.**

Rodney Tyms-Bey brings this interlocutory appeal of the trial court's order granting the State's motion to strike his notice of defense under Indiana's Religious Freedom Restoration Act (RFRA).[1]  Our legislature has carved out a statutory exception to RFRA protections when the government's imposition of a burden furthers a compelling interest and is the least restrictive means of furthering that interest.  We find as a matter of law that the State's compelling interest in a uniform and mandatory taxation system falls into the statutory exception such that RFRA affords no relief to Tyms-Bey.  Therefore, we affirm and remand for further proceedings.

## Facts[2]

On June 24, 2013, the State notified Tyms-Bey that the Department of Revenue had determined that he had falsely reported his income and eligible tax deductions for the tax year 2012 and that he owes the State $1,042.82.  Tyms-Bey responded with paperwork "claim[ing] he is a sovereign citizen and declar[ing] himself an estate."  Appellant's App. Vol. II p. 16.  Tyms-Bey did not subsequently amend his tax return or pay the balance due.  On August 6, 2014, the State charged Tyms-Bey with three counts of class D felony tax evasion.

---

[1] Ind. Code ch. 34-13-9 et seq.

[2] We held oral argument in this matter in Indianapolis on November 21, 2016.  We thank counsel for both parties for their outstanding oral advocacy.

On July 1, 2015, the date Indiana's RFRA statute took effect, Tyms-Bey filed a notice of defense of religious freedom. The State moved to strike the defense. On January 6, 2016, the trial court held a hearing on the motion to strike. At the hearing, Tyms-Bey refused to identify what religious practice or belief was burdened by the State's actions and stated that he believed he was entitled to present his defense to a jury and would provide all evidence at trial. The State argued that a defense of religious freedom is unavailable as a defense to failure to pay taxes. The trial court granted the State's motion to strike, and Tyms-Bey now brings this interlocutory appeal.

## Discussion and Decision

Matters of statutory interpretation present a pure question of law to which we apply a de novo standard of review. *E.g.*, *Study v. State*, 24 N.E.3d 947, 950 (Ind. 2015).

Indiana Code section 34-13-9-8, the heart of Indiana's RFRA, provides as follows:

> (a)   Except as provided in subsection (b), a governmental entity may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability.

> (b)   A governmental entity may substantially burden a person's exercise of religion only if the governmental entity demonstrates that application of the burden to the person:

(1)     is in furtherance of a compelling governmental interest; and

(2)     is the least restrictive means of furthering that compelling governmental interest.

Initially, we note that the State concedes that RFRA applies to criminal proceedings. Appellee's Br. p. 14. And indeed, it plainly does: "This chapter applies to all governmental entity statutes, ordinances, resolutions, executive or administrative orders, regulations, customs, and usages, including the implementation or application thereof, regardless of whether they were enacted, adopted, or initiated before, on, or after July 1, 2015." I.C. § 34-13-9-1. Moreover, a person "may assert the violation or impending violation [of the chapter] as a claim or defense in a judicial or administrative proceeding . . . ." I.C. § 34-13-9-9. There are no general exemptions relevant to criminal prosecutions to be found in the text of RFRA. Therefore, as a general matter, we hold that defendants may raise a RFRA claim in a criminal prosecution.

[6]     Tyms-Bey invites us to address a number of broad issues surrounding RFRA and its application to criminal cases. But this case can be disposed of on much narrower grounds. We will assume solely for argument's sake that Tyms-Bey pleaded a RFRA defense properly and met his burden of showing that this prosecution substantially burdens his exercise of religion. Having made those assumptions, we need decide only whether—as a matter of law—the State's enforcement of its income tax laws is in furtherance of a compelling interest and is the least restrictive means of furthering that compelling interest. In other

words, we must determine whether, viewing the situation in a light most favorable to a defendant facing criminal income tax penalties, that defendant could ever raise a successful RFRA defense. We hold that he could not.

[7] The United States Supreme Court has recognized the compelling interest in the collection of taxes and the absolute necessity of uniform and mandatory participation in the tax system. *United States v. Lee*, 455 U.S. 252, 258-61 (1982) (holding that exception to social security tax sought by Amish employer would undermine the fiscal vitality of the system that necessitates uniform application to all employers); *see also Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 700 (1989) (holding that the reasoning of *Lee* applies equally to federal income tax). The *Lee* Court recognized that the nature of tax systems is such that they "must be uniformly applicable to all, except as Congress provides explicitly otherwise." 455 U.S. at 261. More specifically, "[t]he tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief." *Id.* at 260. As a result, the Court held that "[b]ecause the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax." *Id.*[3]

---

[3] *Lee* was not decided in the context of the federal RFRA, but multiple federal courts have applied the same reasoning to reach the same conclusion under that statute. *E.g.*, *United States v. Indianapolis Baptist Temple*, 224 F.3d 627, 730 (7th Cir. 2000) (holding church not entitled to exemption from federal tax laws because "the difficulties inherent in administering a tax system riddled with judicial exceptions for religious employers make a uniformly applicable tax system the least restrictive means of furthering that interest"); *Adams v. Commissioner of Internal Revenue*, 170 F.3d 173, 179 (3rd Cir. 1999) (observing that the *Lee* holding

[8] In Indiana, our General Assembly has carved out a statutory exception to the protections of RFRA. Specifically, the government may substantially burden a person's exercise of religion if the government's imposition of the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. I.C. § 34-13-9-8(b). As noted above, it has already been held, in a variety of contexts by a variety of courts, that the uniform collection of income tax satisfies both of these requirements.

[9] At oral argument, counsel for Tyms-Bey argued that the imposition of a criminal penalty to someone who has evaded their income tax payment is not the least restrictive means to further the State's compelling interest. But the relevant "means," for purposes of RFRA, is the "burden" the party hopes to avoid, not the sanction imposed for ignoring that burden. Here, the "burden" that Tyms-Bey is seeking to avoid—that burden that he claims violates his religious freedom—is the uniform and mandatory obligation to pay taxes (or the lack of a religious exemption from that obligation), not the specific enforcement mechanism chosen by the state. *See, e.g.*, *Adams*, 170 F.3d at 179 (framing the "compelling interest" as the collection of taxes and framing the "means" of furthering that interest as mandatory participation in the tax system—that is, a system with no (or limited) exceptions).

has turned the "least restrictive means inquiry into a rhetorical question" when it comes to collection of income tax, which must be done in a uniform, mandatory manner).

We find *United States v. Christie*, 825 F.3d 1048 (9th Cir. 2016), particularly instructive. In responding to a criminal defendant's RFRA argument that prosecution under a particular statute was not the least restrictive means of furthering the relevant governmental interest, the *Christie* Court explicitly disagreed with that framing of the issue:

> The Christies next assert that a less restrictive alternative would have been for the government to bring these prosecutions under a less punitive provision of the [Controlled Substances Act], ideally a provision that would not have triggered statutory mandatory minimum penalties. The Christies cite nothing for the proposition that a (potentially) less punitive charging decision qualifies as a "less restrictive" alternative.
>
> We find such lack of authority unsurprising, for at least two reasons. First, when the government exposed the Christies to the threat of a mandatory minimum, it did not restrict their religion to a greater degree than if the government had forgone such charges, for either prosecution would trigger an outright ban on their ability to use and to distribute cannabis. Such alternative prosecutions are equally *restrictive of religion*, even if they might not be equally *punitive*. *Cf.* [*Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2782 n.40 (2014)] (explaining that to qualify as a less restrictive means, a proposed alternative must "accommodate[ ] the religious beliefs asserted in these cases"). Second, given the broad array of charges prosecutors can choose to bring or not to bring in any given case, recognizing the Christies' theory would plunge courts far too deep into the business of reviewing the most basic exercises of prosecutorial discretion.

*Id.* at 1061-62 (emphases original); *see also U.S. v. Wilgus*, 638 F.3d 1272, 1288-95 (10th Cir. 2011) (analyzing whether, under RFRA, banning the possession of

eagle feathers, not whether criminal enforcement of that ban, is the least restrictive means of furthering the compelling governmental interest in protecting eagles).

[11] In other words, in the case at hand, regardless of the State's chosen enforcement mechanism, the "burden" that Tyms-Bey wants to avoid is the same—the requirement that he pay taxes. The fact that the State has both civil and criminal enforcement options is beside the point. We find that the uniform and mandatory tax system as a whole, which incorporates the criminal penalties at issue here, is the least restrictive means of furthering the government's compelling interest in collecting revenue.

[12] We adopt the analysis of the *Lee* Court and hold as a matter of law that, in the context of Indiana's RFRA, there is a compelling governmental interest in collecting income tax revenue. Moreover, we hold as a matter of law that the least restrictive means of furthering that compelling interest is uniform and mandatory participation in the income tax system. There are no facts that Tyms-Bey could proffer with respect to his exercise of religion that would not be overcome by the State's compelling interest and the means used by the State in furthering that interest. In other words, as a matter of law, Indiana's RFRA offers

no protection for the allegedly criminal nonpayment of income taxes by Tyms-Bey, and the trial court did not err by denying his request to assert the defense.[4]

[13] The judgment of the trial court is affirmed and remanded for further proceedings.

Vaidik, C.J., concurs.

Najam, J., dissents with a separate opinion.

---

[4] We leave for another day and another case the broader arguments and procedural questions raised by Tyms-Bey about the application of RFRA to criminal prosecutions, including those concerning the proper role of the trial court judge, both before and during trial, under Indiana Code section 34-13-9-10.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodney Tyms-Bey, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | Court of Appeals Case No. <br> 49A05-1603-CR-439 |

**Najam, Judge, dissenting.**

[14] I respectfully dissent. Tyms-Bey's alleged RFRA defense may ultimately not succeed, but he is entitled to his day in court. The majority's holding that, in effect, Tyms-Bey has not stated a claim under RFRA and that he is not even entitled to present evidence in support of his alleged defense is too quick to dispose of Tyms-Bey's claim and denies him the particularized adjudication that is expressly afforded to him by Indiana's RFRA. Moreover, in enacting Indiana's RFRA, our legislature explicitly reserved to itself, and withheld from our judiciary, the right to declare categorical exemptions from RFRA's

application. The majority's holding disregards that command and categorically removes tax-based actions from RFRA's application. The majority's analysis further misunderstands the least restrictive means test under RFRA and denies Tyms-Bey his right under Article 1, Section 19 of the Indiana Constitution. And the majority's selective use of federal authority fails to consider federal cases in which religious exemptions from facially neutral tax laws have been permitted, and, in any event, the authority relied on by the majority is readily distinguishable.

## *Overview*

[15] Indiana's RFRA represents a new paradigm in Indiana law concerning exercise-of-religion claims and defenses. Federal and state legislatures have enacted RFRA laws following the United States Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990). In *Smith*, the Court held that the Free Exercise Clause of the First Amendment "does not require judges to engage in a case-by-case assessment of the religious burdens imposed by facially constitutional laws." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (discussing *Smith*, 494 U.S. at 883-90). By rejecting *Smith* and enacting Indiana's RFRA, the General Assembly now requires claims of religious exemptions from laws of general applicability to be determined on a case-by-case basis using a strict scrutiny analysis. Ind. Code § 34-13-9-8 (2016).

[16] But, contrary to the majority's assessment, Indiana's new religious-freedom paradigm goes further than merely reinstating pre-*Smith* free exercise cases. As

with its identically worded federal counterpart, by its plain terms Indiana's RFRA is "an obvious effort" by the General Assembly "to effect a complete separation from First Amendment case law." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2761-62 (2014). For example, Indiana's RFRA, like the federal version, defines "exercise of religion" more broadly than First Amendment case law defines it, and our RFRA also provides a broader definition of the "person[s]" who may bring RFRA claims or defenses than does either First Amendment case law or the federal RFRA. *See id.* at 2772, 2775; *see also* I.C. § 34-13-9-5 (defining "exercise of religion"); I.C. § 34-13-9-7 (defining "person").

[17] And there is good reason for the General Assembly to have sought that complete separation. It is widely recognized that the "least restrictive means requirement" under RFRA "was not used in the pre-*Smith* jurisprudence." *City of Boerne v. Flores*, 521 U.S. 507, 535 (1997). Rather, the pre-*Smith* case law, in which the Supreme Court routinely sided with the government,[5] "indicates that [the Court] was not applying a genuine 'compelling' interest test." James E. Ryan, *Smith and the Religious Freedom Restoration Act: An Iconoclastic Assessment*, 78 Va. L. Rev. 1407, 1413-15 (1992) (specifically identifying *United States v. Lee* as one such decision); *see also United States v. Lee*, 455 U.S. 252, 262 (1982) (Stevens, J., concurring in judgment) (concluding that the government's

---

[5] In the seventeen cases between 1963 and 1990 in which the United States Supreme Court considered religious exemptions under the strict scrutiny test, in thirteen the Court sided with the government. James E. Ryan, *Smith and the Religious Freedom Restoration Act: An Iconoclastic Assessment*, 78 Va. L. Rev. 1407, 1413-14 (1992).

argument in *Lee* did not pass strict scrutiny and that the majority's opinion was better understood using the test the Court later adopted in *Smith*).[6] Thus, RFRA is unmistakably "broader" than that case law. *City of Boerne*, 521 U.S. at 535. The Court's decision in *Smith* was simply the last straw, which caused legislatures throughout the nation to enact statutory protections for claimants of religious exemptions.

[18]     Rather than following *Burwell*, the majority instead concludes that *Lee*, a pre-*Smith* case, and its progeny more accurately reflect our legislature's intent when it enacted RFRA. I cannot agree and must conclude that the majority's assessment that Indiana's RFRA adds nothing to pre-*Smith* jurisprudence is contrary to RFRA. As the *Burwell* Court recognized, *Lee* is "a free exercise, not a RFRA, case." *Burwell*, 134 S. Ct. at 2784. Indeed, the *Burwell* Court expressly concluded that the reasoning in *Lee* is "squarely inconsistent with the plain meaning of RFRA." *Id.* at 2784 n.43 (discussing *Lee*, 455 U.S. at 261). Our legislature enacted RFRA less than nine months after the Court's opinion in *Burwell*, which was the impetus for our legislature's decision. Moreover, Indiana's RFRA contains the exact same language that the Court in *Burwell*, considering the federal RFRA, held to provide broader protection to the

---

[6] Indeed, the *Smith* Court quoted Justice Stevens' concurring opinion in *Lee* with approval. *Smith*, 494 U.S. at 879.

exercise of religion than *Lee* and its progeny, and Indiana's RFRA expressly codifies and expands upon the holding in *Burwell*.[7]  *See* I.C. §§ 34-13-9-5, -7.

[19]    Accordingly, I would hold that *Burwell*, not *Lee*, best reflects the intent of our legislature in enacting RFRA.  And this is significant here because, as *Burwell* explains, RFRA demands a fact-sensitive, "particularized" assessment of the claimed religious exemption, while *Lee* does not.  *Burwell*, 134 S. Ct. at 2779-80, 2783-85.

---

[7]  Indeed, I agree with the majority and the State's concession that, by its plain terms, Indiana's RFRA may be raised as a defense to any criminal prosecution, which includes the State's prosecution of Tyms-Bey for tax evasion.  *See* Appellee's Br. at 14.  In this respect, Indiana's RFRA is broader than several other states' RFRA laws, which have numerous, various exemptions from coverage.  For example, Florida prohibits its RFRA from being used as a defense to a drug-related criminal allegation.  Fla. Stat. Ann. § 761.05(4) (West 2016).  Indiana's RFRA, by comparison, only exempts certain allegations of discrimination and certain claims against private employers from its coverage, I.C. §§ 34-13-9-0.7, -11, and it applies in all other circumstances, *see* I.C. §§ 34-13-9-1, -2.

The State also notes that "RFRA is not a defense to criminal conduct only and . . . can be brought proactively for an actual or likely burden on a person's religious exercise and to obtain declaratory or injunctive relief to prevent that burden . . . ."  Appellee's Br. at 10; *see* I.C. § 34-13-9-9.  Taken in conjunction with its concession that RFRA applies to criminal proceedings, it is clear that the State concedes that Hoosiers need not proactively assert, in a declaratory judgment proceeding or otherwise, their rights to religious exercise to be able to assert those rights as a defense in a criminal proceeding.  By comparison, other states with RFRA laws do require certain procedures to be followed before an individual may later raise RFRA as a defense.  *E.g.*, Tex. Civ. Prac. & Remedies Code Ann. § 110.006 (West 2015).

Taken together, and especially in light of their more restrictive counterparts in foreign jurisdictions, those provisions evince our legislature's intent to make RFRA rights broadly available absent explicit direction from the General Assembly otherwise.  Indeed, those provisions of Indiana's RFRA, along with the expansive definition of "person" in Indiana Code Section 34-13-9-7 and the express permission under Indiana Code Section 34-13-9-9 to invoke RFRA in proceedings that involve only private parties, make Indiana's RFRA more broadly available than the federal RFRA.  Again, in *Burwell* the Court held that *Lee* was not controlling law under the federal RFRA because the federal RFRA provided greater protection than the pre-*Smith* free exercise cases.  *Burwell*, 134 S. Ct. at 2784; *see City of Boerne*, 521 U.S. at 535.  If the federal RFRA provides greater protection than the pre-*Smith* case law, that is only all the more true for Indiana's RFRA.

[20]   With that background in mind, I turn to five reasons for my disagreement with the majority on the limited facts of this case.

### 1. *Indiana Code Sections 34-13-9-1 and -2*

[21]   First, by its plain terms Indiana's RFRA expressly permits *all* litigants in Indiana *in any cause of action*, other than actions based on certain claims of discrimination or claims against private employers, to assert their exercise of religion as a claim or defense against compliance with a statutory mandate. I.C. §§ 34-13-9-0.7 to -2, -11. Specifically, Indiana Code Section 34-13-9-1 unambiguously states that RFRA "applies to all . . . statutes," and Section 34-13-9-2 just as clearly states that "*[a] . . . statute . . . may not be construed to be exempt from the application of this chapter unless a state statute expressly exempts the statute . . . .*" (Emphasis added.)

[22]   In other words, the General Assembly expressly reserved to itself the right to exempt statutes from RFRA's application and expressly commanded the judiciary to not "construe[]" statutes "to be exempt from th[at] application." *Id.* Those commands are consistent with the case-by-case, particularized adjudications the *Burwell* Court described as fundamental to RFRA. *See* 134 S. Ct. at 2779-80. And there is no state statute that expressly exempts tax evasion prosecutions from the application of RFRA.

[23]   Nonetheless, the majority construes tax evasion prosecutions as exempt from RFRA defenses and, in doing so, contravenes those express instructions. *See* I.C. § 34-13-9-2. As the Indiana Supreme Court has made clear, to discern our

legislature's intent "we look first to the statutory language and give effect to the plain and ordinary meaning of statutory terms. Where the language is clear and unambiguous, there is no room for judicial construction." *Jackson v. State*, 50 N.E.3d 767, 772 (Ind. 2016) (citations and quotation marks omitted). Indiana Code Sections 34-13-9-1 and -2 leave no room to look elsewhere for interpretive authority. The General Assembly has unambiguously declared that the judiciary is not to exempt RFRA claims and defenses from any action and that such exemptions lie solely within the prerogative of the General Assembly. If we disregard that plain language, "the General Assembly might fairly ask if we're listening." *Dye v. State*, 972 N.E.2d 853, 862 (Ind. 2012) (Massa, J., dissenting). As a matter of law under RFRA, Tyms-Bey is entitled to present facts in support of his alleged RFRA defense to the State's criminal charges against him, and the trial court erred when it preemptively struck his alleged defense.

## 2. Least Restrictive Means Test

[24]     Second, the majority's analysis misunderstands the least restrictive means test as used in RFRA and instead erroneously applies the more permissive standards from pre-*Smith* case law. *See City of Boerne*, 521 U.S. at 535; Ryan, *supra*, 78 Va. L. Rev. at 1413-15. As explained by the Court in *Burwell*, the least restrictive means test under RFRA is "exceptionally demanding" and requires the State to show that "it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y] . . . ." 134 S. Ct. at 2780. This test requires the State to

demonstrate that the "application of the burden *to the person*" is the least restrictive means of furthering the State's compelling interest. I.C. § 34-13-9-8(b) (emphasis added); *see Burwell*, 134 S. Ct. at 2780 (quoting 42 U.S.C. § 2000bb-1(a), (b)). And considering "the burden to the person" requires a "focused inquiry" that "look[s] beyond broadly formulated interests and . . . scrutinize[s] the asserted harm of granting specific exemptions to particular religious claimants . . . ." *Burwell*, 134 S. Ct. at 2779 (quotation marks and brackets omitted).

[25] Here, the absence of facts from either Tyms-Bey or the State is fatal to the majority's argument.[8] Rather than rely on any specific facts, the majority instead relies exclusively on *Lee* and its progeny, which concluded under the Free Exercise Clause that the government's need in uniform and mandatory participation in the tax scheme necessarily overcomes any individualized concerns. *Lee*, 455 U.S. at 258-61. But this is not a free exercise case.

[26] Rather, under RFRA, the State cannot rely on such "broadly formulated interests" but instead must demonstrate how granting Tyms-Bey his asserted exemption would prevent the State from "achieving its desired goal." *See*

---

[8] In the State's probable cause affidavit in support of the tax evasion charges, the State asserted that Tyms-Bey "claimed he is a sovereign citizen," "declared himself an estate," and "den[ied] . . . liability of the tax due." Appellant's App. Vol. II at 16. But there is no evidence that Tyms-Bey intends to rely on those same assertions as the basis for his RFRA defense. Indeed, in its motion to strike Tyms-Bey's RFRA defense, the State acknowledged that he "has not yet identified what religion he belongs to, how the tenets of that religion relate to Indiana's income tax regime[,] or how that tax negatively impacts the practice of his religion." *Id.* at 36.

*Burwell*, 134 S. Ct. at 2779-80. And without a factual basis in the record for Tyms-Bey's asserted exemption, the State cannot satisfy that test. Indeed, religious exemptions already exist in the tax code. If Tyms-Bey's RFRA defense is that he was wrongly denied such exemptions, the State would be hard pressed under the least restrictive means test to demonstrate how granting him an already established exemption would prevent the State from achieving its goals. *See, e.g., Lee*, 455 U.S. at 262 (Stevens, J., concurring in judgment) ("As a matter of administration it would be a relatively simple matter to extend" existing religion-based tax exemptions "to the taxes involved in this case"); *see also Burwell*, 134 S. Ct. at 2780-82 (holding under the federal RFRA that a government-established exception for religious nonprofit businesses would "serve[ the government's] stated interests equally well" if extended to some religious for-profit businesses). Accordingly, I cannot say, as a matter of law, that the State has met the "exceptionally demanding" and "particularized" strict scrutiny analysis required under RFRA.[9] *See Burwell*, 134 S. Ct. at 2779-80.

---

[9] At oral argument, Tyms-Bey's counsel asserted that the least restrictive means test requires the State to pursue civil enforcement mechanisms before it may enforce tax delinquencies through criminal proceedings. Other jurisdictions have agreed and held that, where the law at issue provides for both civil and criminal enforcement mechanisms, to satisfy the least restrictive means test the governmental entity must demonstrate that the criminal option is the least restrictive option. *See, e.g., State v. J.P.*, 907 So. 2d 1101, 1119 (Fla. 2004) (holding that "the imposition of criminal sanctions" for curfew violations is not the least restrictive means to further local governmental entities' compelling interests because "[t]he same goals could be achieved by imposing a civil penalty"); *Commonwealth v. Weston W.*, 913 N.E.2d 832, 846 (Mass. 2009) (holding that the Commonwealth "failed to meet its burden" under the least restrictive means test "to show that the use of criminal penalties provides an increased benefit over . . . civil enforcement mechanisms . . . sufficient to offset their greater intrusion"). Here, in its probable cause affidavit the State asserted that the Department of Revenue mailed Tyms-Bey "a notice . . . that he owed . . . taxes," but there is no evidence of any attempts at

### *3. Article 1, Section 19*

Third, the majority's preemptive strike of Tyms-Bey's RFRA defense denies him his right under Article 1, Section 19 to a jury trial on an affirmative defense. Although RFRA generally presents a question of law, *see* I.C. § 34-13-9-10,[10] in criminal cases, such as here, Article 1, Section 19 of the Indiana Constitution requires that a defendant who asserts RFRA as an affirmative defense and has not waived his jury trial right be permitted to present evidence of that defense to a jury.

As we have explained:

> The constitution is emphatic that the right of the jury to determine the law as well as the facts applies "[i]n *all* criminal cases *whatever*." Ind. Const. art. 1, § 19 (emphasis added). "All" is defined as "the whole extent or duration of . . . each and every one of." Webster's Third New International Dictionary 54 (1976). "Whatever" is defined as "no matter what . . . of any kind at all." *Id.* at 2600. We believe that the terms "all" and "whatever" mean what they say. In interpreting the Indiana Constitution, our analysis is controlled by the text itself. *Price v. State*, 622 N.E.2d 954, 957 (Ind. 1993). Article 1, Section 19 does not speak of verdicts but of "criminal cases."

---

collection by the State prior to the filing of the instant criminal charges or any evidence that such attempts would have been ineffective. Appellant's App. Vol. II at 15-16.

[10] Indiana Code Section 34-13-9-10 states that a RFRA determination is to be made by "a court or other tribunal in which a violation of this chapter is asserted . . . ." That statute further provides that, if a RFRA violation is found, "the court or other tribunal shall allow a defense . . . and shall grant appropriate relief . . . ." I.C. § 34-13-9-10. That language suggests that the viability of a RFRA claim or defense generally is a question of law for the court or other tribunal "in which" the claim or defense is asserted and from which the claiming party can obtain "appropriate relief." *See id.*

*Seay v. State*, 673 N.E.2d 475, 480 (Ind. Ct. App. 1996), *adopted*, 698 N.E.2d 732, 733 (Ind. 1998). The General Assembly, having expressly permitted RFRA to be raised as an affirmative defense in criminal actions, cannot then deny the right to submit that defense to a jury under Article 1, Section 19. *Id.* at 479.

[29] And, despite the State's argument to the contrary on appeal, there is no serious question whether RFRA is an affirmative defense for criminal defendants. A criminal defendant who asserts RFRA as a defense contends, in effect, that any evidence the State may present of his alleged criminal conduct is a legal nullity if the defendant demonstrates that the statute imposes a substantial burden on his exercise of religion and the State fails to rebut the defendant's showing. That is plainly an affirmative defense. *See, e.g.*, *Melendez v. State*, 511 N.E.2d 454, 457 (Ind. 1987). Further, it is well established that the defendant bears the initial burden of proof at trial to demonstrate his affirmative defense by a preponderance of the evidence. *Lacy v. State*, 58 N.E.3d 944, 948 (Ind. Ct. App. 2016). The burden then shifts to the State to negate the defense beyond a reasonable doubt. *Id.*

[30] Indiana Code Section 34-13-9-10 can be harmonized with Article 1, Section 19. Specifically, if a criminal defendant who has asserted RFRA as an affirmative defense to the jury fails to present evidence in the record at trial to support his burden on that defense, the trial court may, in its discretion, decline to give a jury instruction on the defense. *E.g.*, *Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind. 2006). In this manner, RFRA secures both the trial court's role as a

gatekeeper under Section 34-13-9-10 before the jury and the criminal defendant's jury trial right under Article 1, Section 19.

[31] Moreover, Tyms-Bey was not required to present evidence in support of his affirmative defense to the trial court in a pretrial hearing on the State's motion to strike. Tyms-Bey has no more pretrial burden of proof than any other criminal defendant who asserts an affirmative defense, even if a pretrial notice of that affirmative defense is required, which such notice is not required for RFRA defenses.[11] *See, e.g.*, *Griffin v. State*, 664 N.E.2d 373, 375-76 (Ind. Ct. App. 1996). As a courtesy, Tyms-Bey notified the State that he would assert a RFRA defense at trial before a jury. That was sufficient, and to hold otherwise simply discourages pretrial notices.

[32] The majority has, in effect, declared that Tyms-Bey has failed to state a claim under RFRA. In so holding, the majority has denied Tyms-Bey his constitutional right to present evidence of his RFRA affirmative defense to a jury. The trial court should have denied the State's motion to strike under Indiana Trial Rule 12(F).

---

[11] Nothing in our rules of criminal or trial procedure prohibit the State from seeking discovery regarding any potential RFRA defenses to avoid a trial-day surprise.

### 4. First Amendment Precedent
### Demonstrates the Need for a Factual Basis

[33] Fourth, the majority's reliance on selected federal cases in lieu of the plain text of Indiana's RFRA and Article 1, Section 19 is misplaced. Indeed, Indiana's RFRA aside, the United States Supreme Court has repeatedly recognized that some facially neutral tax laws do not withstand strict scrutiny when applied to particular individuals. For example, in *Murdock v. Pennsylvania*, the Court held that an otherwise nondiscriminatory tax that, as applied, required "religious colporteurs to pay a license tax as a condition to the pursuit of their activities" did not pass strict scrutiny. 319 U.S. 105, 110, 63 S. Ct. 870, 873 (1943). Likewise, in *Follett v. Town of McCormick*, the Court held that persons exercising their religion "may be subject to general taxation" but that "does not mean that they can be required to pay a tax for the exercise of that which the First Amendment has made a high constitutional privilege." 321 U.S. 573, 577-78 (1944).

[34] Similarly, in *Sherbert v. Verner*[12] the Supreme Court explained as follows:

> In *Speiser v. Randall*, 357 U.S. 513, 78 S. Ct. 1332, 2 L. Ed. 2d 1460, we . . . struck down a condition which limited the availability of a tax exemption to those members of the exempted class who affirmed their loyalty to the state government granting the exemption. While the State was surely under no obligation to afford such an exemption, we held that the imposition of such

---

[12] The federal RFRA expressly identifies *Sherbert* as applying an analysis consistent with that statute's intended protection. 42 U.S.C. § 2000bb(b)(1).

a condition upon even a gratuitous benefit inevitably deterred or discouraged the exercise of First Amendment rights of expression . . . . 'To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech.' *Id.*, 357 U.S., at 518, 78 S. Ct., at 1338. *Likewise, to condition the availability of benefits upon this appellant's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties.*

374 U.S. 398, 405-06 (1963) (emphasis added). In other words, in *Sherbert* the Supreme Court recognized that the government cannot condition tax benefits on a claimant's willingness to violate his faith.

[35] Because Tyms-Bey has not yet had the opportunity to present facts in support of his defense under RFRA, we cannot say that his defense is "insufficient" under Indiana Trial Rule 12(F) and must fail as a matter of law. We do not yet know the basis for Tyms-Bey's claimed exemption. We know the State has alleged a certain sum of unpaid taxes based on allegedly unreported income, allegedly falsely reported rental addresses, and an allegedly falsely claimed credit. But we do not know if, as in *Murdock* and *Follett*, Tyms-Bey's religious defense to those allegations is aimed particularly at specific provisions of the code as applied to him. Nor do we know if, as in *Sherbert* and *Speiser*, he believes that the State has denied him an exemption or benefit based on his willingness to violate a tenet of his faith. Simply, without a factual basis we cannot say that Tyms-Bey has no defense under RFRA.

## 5. *United States v. Lee* Is Readily Distinguishable, Even If It Were To Apply

[36] Fifth, and finally, *Lee* and its progeny, even if they were to apply under Indiana's RFRA, are not on all fours with Tyms-Bey's case. Rather, *Lee* is readily distinguishable from Tyms-Bey's case because, in *Lee*, there was a factual basis established for the claimant's religious objection. In particular, the record in *Lee* makes clear that the objector, in his role as an employer and business owner, failed to withhold Social Security taxes from his employees' paychecks and likewise failed to pay the employer's share of those taxes. He argued that his actions were justified because the entirety of the Social Security system was contrary to his religious beliefs. The Supreme Court rejected that argument as a valid basis for a First Amendment religious exemption. *Lee*, 455 U.S. at 261.

[37] But, again, here we have no idea what the factual basis for Tyms-Bey's RFRA defense may be. And without any evidence we cannot assume the basis for that defense. Accordingly, for that additional reason, the majority's reliance on *Lee* is misplaced.

## Conclusion

[38] In sum, I respectfully dissent. The majority's holding that, "as a matter of law, Indiana's RFRA offers no protection for the allegedly criminal nonpayment of income taxes," slip op. at 8-9, is erroneously premised on *Lee* rather than *Burwell* and, as a result, undermines the broad and particularized protection our legislature intended RFRA to have. The majority's analysis is contrary to the

plain language of Indiana's RFRA; it does not properly define or apply the least restrictive means test implemented by RFRA; and it denies Tyms-Bey his jury trial right under Article 1, Section 19. Further, the majority's reliance on selected federal cases is misplaced. The majority's selection of authorities does not account for cases in which particularized religious exemptions from facially neutral tax laws have been permitted. Neither is the majority's reliance on *Lee* persuasive when, unlike *Lee*, here there is no factual basis in the record for Tyms-Bey's asserted defense.

[39] The majority's opinion that there are no facts that Tyms-Bey could offer to support his defense is contrary to RFRA's mandate and is "a pre-emptive strike on a matter that deserves further record development." *Citizens Action Coalition v. Koch*, 51 N.E.3d 236, 243 (Ind. 2016) (Rucker, J., concurring in part and dissenting in part). Without question, the majority is concerned, as were the dissenters in *Burwell*, that RFRA will wreck "havoc" on judicial proceedings and be a "radical" departure from the status quo. *Burwell*, 134 S. Ct. at 2787, 2805 (Ginsburg, J., dissenting). But "[t]he wisdom of [our legislature's] judgment on this matter is not our concern. Our responsibility is to enforce RFRA as written, and under the standard that RFRA prescribes . . . ." *Id.* at 2785 (majority opinion). And it is certainly not the judiciary's role to construe actions as exempt from RFRA when our legislature has expressly reserved that right to itself. *See* I.C. § 34-13-9-2.

[40] At the end of the day, Tyms-Bey's exercise-of-religion defense may not prevail. But we cannot say as a matter of law that Tyms-Bey can prove no set of facts in

support of his RFRA defense that would entitle him to relief. The issue is not whether a RFRA claimant will ultimately prevail but whether he is entitled to offer evidence to support his claim. In other words, Tyms-Bey is entitled to his day in court and to the same due process as any other criminal defendant, including his right to present his affirmative defense to a jury. Otherwise, RFRA is for naught and offers no more protection to the exercise of religion than does the First Amendment. Accordingly, I would reverse the trial court's judgment and remand for further proceedings that comply with the unmistakable commands of RFRA, with Article 1, Section 19, and with the same criminal trial procedure we follow when, as here, the defendant asserts an affirmative defense.